**Richard M. Wintory**
1 South Church Avenue, Suite 1200
Tucson, Arizona 85701
(520) 448.5051
State Bar No. 022768
Richard.Wintory@nextchapterlaw.net
Attorney for Plaintiff Freedom Pfaendler

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Freedom Christopher Austin Pfaendler,<br><br>Plaintiff,<br><br>vs.<br><br>Town of Sahuarita, John George, Joseph A. Rivera, Jess Villanueva, Shannon Collier, and Samuel Almodova,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff, by and through counsel undersigned, brings this civil rights action against the Town of Sahuarita and the individual officers named above pursuant to 42 U.S.C. § 1983. Herein, Plaintiff seeks both monetary damages and equitable relief. In support of the same, Plaintiff alleges the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Freedom Christopher Austin Pfaendler, is a resident of Pima County, Arizona.

2. Defendant, Town of Sahuarita, is a town incorporated in Pima County, Arizona.

3. Defendant, John George, was, at all relevant times, a police officer employed by the Town of Sahuarita and was, at all relevant times, acting under color of state law.

4. Defendant George is sued in his individual and official capacities.

1

5. Defendant, Joseph A. Rivera, was, at all relevant times, a police officer employed by the Town of Sahuarita and was, at all relevant times, acting under color of state law.

6. Defendant Rivera is sued in his individual and official capacities.

7. Defendant, Jess Villanueva, was, at all relevant times, a police officer employed by the Town of Sahuarita and was, at all relevant times, acting under color of state law.

8. Defendant Villanueva is sued in his individual and official capacities.

9. Defendant, Shannon Collier, was, at all relevant times, a police officer employed by the Town of Sahuarita and was, at all relevant times, acting under color of state law.

10. Defendant Collier is sued in his individual and official capacities.

11. Defendant, Samuel Almodova, was, at all relevant times, a police officer employed by the Town of Sahuarita and was, at all relevant times, acting under color of state law.

12. Defendant Almodova is sued in his individual and official capacities.

13. Plaintiff brings claims against all Defendants for federal civil rights violations pursuant to 42 U.S.C. § 1983.

14. Plaintiff also brings state law claims against all Defendants, over which this Court has pendant jurisdiction pursuant to 28 U.S.C. § 1367.

15. Plaintiff gave proper notice of his state law claims to Defendants pursuant to A.R.S. § 12-821 and § 12.821.01.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

16. Plaintiff is a long-time resident of the Town of Sahuarita, and graduate from Sahuarita high school.

17. August 6, 2019, started for Plaintiff as a normal day but quickly devolved into a traumatic violation of his civil rights when he was detained, searched, arrested, and then prosecuted, all without probable cause.

18. As was his custom, Plaintiff was commuting to work on his motorcycle when he stopped to purchase some items for his lunch at the Walmart located on South Nogales Highway on the day of the incident.

19. Plaintiff went into Walmart wearing his motorcycle clothes and helmet.

20. Plaintiff's motorcycle helmet was equipped with Bluetooth speakers, which were playing music while he shopped in Walmart.

21. Plaintiff often chose not to remove his helmet when stopping to shop at Walmart and other nearby stores on his way to work in order to save time.

22. Plaintiff moved through Walmart gathering those items that he intended to purchase.

23. Unbeknownst to Plaintiff, the store manager instructed an assistant manager to call 911 because the manager was apparently alarmed by Plaintiff's appearance.

24. While Plaintiff shopped, two separate Walmart employees called 911, but no one approached Plaintiff or made an effort to get his attention.

25. When asked by the 911 operator what Plaintiff was doing, one of the Walmart employees reported that he appeared to be shopping, later updating her report to add that Plaintiff appeared to have put items for purchase on the conveyor belt in a checkout line.

26. Sahuarita police officers George, Rivera, and Villanueva responded to the Walmart and were later joined by Officer Collier.

27. Meanwhile, Plaintiff paid for his items without incident and paused at a seating area to put his purchases into his backpack, with his back to the rest of the store.

28. Plaintiff was busy storing the items in his backpack when officers approached him, and Officer George said, "Hey buddy, you got some I.D.?"

29. Even though the officer was only two feet behind Plaintiff, Plaintiff did not hear the question through his helmet.

30. It was not until Officer George stepped within inches of Plaintiff and addressed him in a projected, command voice, that Plaintiff looked up, clearly startled.

31. Plaintiff's inability to hear George's first command was unambiguous, alerting officers to the deficit.

32. Plaintiff cooperated with officers' requests to remove his helmet, show his receipt, and answer their questions.

33. Initially, the Walmart manager told officers that he had approached Plaintiff and asked him to remove his helmet and that Plaintiff ignored the request.

34. The manager, who became increasingly histrionic in his presentation, later told officers that he had followed Plaintiff around the store attempting to get his attention.

35. The manager's description of the event was so fluid, he ultimately told officers that he'd demanded Plaintiff leave the store, only to be ignored.

36. Plaintiff explained that he never heard the manager ask him to remove his helmet and did not notice the manager trying to get his attention.

37. Despite his manner, officers permitted the store manager to remain present in the area where they were questioning Plaintiff, even allowing the manager to interject as Plaintiff disputed the manager's evolving description.

38. Plaintiff's entire trip into Walmart, from his entry through his removal from the store in handcuffs, was captured on video, either from the Walmart surveillance footage or officers' body worn cameras.

39. The video footage makes clear that the Walmart manager was not truthful and had, in fact, not approached Plaintiff, much less stood within Plaintiff's line of sight one to two feet away, nor made any clear effort to get Plaintiff's attention.

40. Initially, officers were going to give Plaintiff a lecture and/or trespass him from the store or issue him a citation and release him from the store.

41. However, the tenor of the officers' interaction with Plaintiff changed and grew increasingly hostile.

42. First, Officer George ordered Plaintiff to "reach down between [his] legs and pull your head out of your ass!"

43. Then, accusing Plaintiff of arguing with him, George demanded that Plaintiff "listen to learn and not to respond."

44. Soon, George ordered Plaintiff to stop talking altogether.

45. Moments later, another officer began asking Plaintiff questions.

46. Plaintiff pointed to Officer George, who had told Plaintiff not to speak, as a non-verbal request for permission, but he received no response.

47. Disregarding Plaintiff's dilemma, the officers discontinued their course of action and, rather than trespassing Plaintiff or citing and releasing him, officers conducted a full, custodial arrest without probable cause.

48. At the time officers decided to arrest Plaintiff, they told Plaintiff he was being arrested for trespassing.

49. Adding insult to injury, officers conducted a thorough search incident to Plaintiff's unconstitutional arrest in the front of the Walmart that is located on Plaintiff's route to his place of employment, a store he had frequently patronized in the past.

50. Not only did officers check Plaintiff's pockets, but they removed his jacket, shoes, and even socks right there in the parking lot while other patrons gawked as they passed.

51. Plaintiff, a hard-working, gainfully employed, former JROTC student, was humiliated by the conduct to which he was subjected.

52. Yet despite his natural anger and embarrassment, Plaintiff cooperated with the officers.

53. Plaintiff was booked into jail for the first time in his life, where he spent 17 hours.

5

54. Plaintiff was initially suspended from his job because of the arrest.

55. Fortunately, Plaintiff's boss, who was familiar with Plaintiff and confident in his character, allowed him to return to work pending resolution of Plaintiff's criminal charge.

56. It was a bold decision for Plaintiff's employer because the very next day, KOLD News and the local paper ran an article about Plaintiff's arrest with his picture prominently displayed.

57. KOLD was provided the information about Plaintiff's arrest by Sahuarita Lieutenant and Public Information Officer Samuel Almodova.

58. Almodova likened Plaintiff to a copycat mass shooter, and KOLD put the pernicious comparison in print.

59. As a result, Plaintiff's reputation in the community was seriously damaged.

60. Plaintiff was ultimately charged not with trespassing but with one count of disorderly conduct.

61. Plaintiff was forced to hire an attorney to defend himself in the criminal case.

62. The Sahuarita Town Prosecutor dismissed the lone charge against Plaintiff on October 18, 2019.

**COUNT I: FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT**

63. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-62 as though set forth fully herein.

64. Officers George, Rivera, Villanueva, and Collier participated in Plaintiff's warrantless arrest without probable cause.

65. No reasonable officer could have concluded, under the totality of the circumstances known at the time, that Plaintiff refused a request by the manager to leave Walmart.

66. No reasonable officer could have concluded, under the totality of the circumstances known at the time, that Plaintiff had engaged in "seriously disruptive behavior."

67. Officers have probable cause to arrest Plaintiff for any criminal offense.

68. Plaintiff was damaged as a result of Defendants' violation of his Constitutional rights.

69. To the extent that any policy or practice of the Town of Sahuarita was the moving force behind the violation, the Town is also liable under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978).

**COUNT II: ILLEGAL SEARCH IN VIOLATION OF THE FOURTH AMENDMENT**

70. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-69 as though set forth fully herein.

71. Because Plaintiff's arrest violated the Fourth Amendment, any warrantless search of his person incident to the same arrest violates the Fourth Amendment's prohibition on unreasonable searches.

72. Officers' warrantless search of Plaintiff's person also went beyond the scope of that which is justified by the search incident to arrest exception to the Fourth Amendment's warrant requirement.

73. Plaintiff was damaged as a result as a result of Defendants' violation of his Constitutional rights.

74. To the extent that any policy or practice of the Town of Sahuarita was the moving force behind the violation, the Town is also liable under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978).

**COUNT III: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT**

75. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-74 as though set forth fully herein.

76. Plaintiff was held in jail for seventeen hours pursuant to Defendants' citation and Form 4 statement of probable cause.

77. Notably, the Town of Sahuarita has not produced the Form 4 despite a Public Records Request, citing "unavailability" of the document.

78. This detention without probable cause, based on officers' malicious initiation of legal process, violated Plaintiff's Fourth Amendment right to be free of unlawful seizure.

79. Plaintiff was damaged as a result of Defendants' violation of his Constitutional rights.

80. To the extent that any policy or practice of the Town of Sahuarita was the moving force behind the violation, the Town is also liable under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978).

## COUNT IV: MALICIOUS PROSECUTION IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS

81. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-80 as though set forth fully herein.

82. From his arrest on August 6, 2019, until October 18, 2019, Plaintiff was being prosecuted, first apparently for trespassing and ultimately for disorderly conduct, both without probable cause.

83. Plaintiff's prosecution was motivated by malice.

84. The prosecution terminated in Plaintiff's favor on October 18, 2019.

85. Plaintiff incurred substantial expense to hire an attorney to defend him in the criminal matter.

86. Plaintiff was further damaged as a result of Defendants' actions.

87. To the extent that any policy or practice of the Town of Sahuarita was the moving force behind the violation, the Town is also liable under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978).

# COUNT V: FAILURE TO CONDUCT A REASONABLY THOROUGH INVESTIGATION IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS

88. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-87 as though set forth fully herein.

89. Officers' failure to conduct a reasonably thorough investigation resulted in Plaintiff's arrest and prosecution without probable cause.

90. To the extent that Defendant officers claim that they relied on the Walmart manager's account to justify Plaintiff's arrest, the briefest, most cursory additional investigation would have definitively exonerated Plaintiff of criminal wrongdoing.

91. Had officers watched the Walmart security footage on August 6, 2019, it would have been apparent to them that the manager did not make any obvious effort to get Plaintiff's attention, request that he remove his helmet, or demand that he leave the premises.

92. It would have also been apparent that Plaintiff's presence in the store was not disruptive.

93. Instead, it was not until the Sahuarita Town Prosecutor watched the Walmart surveillance footage that Plaintiff's prosecution was terminated in his favor.

94. In other words, Sahuarita police officers allowed Plaintiff to live with the fear and uncertainty of an unconstitutional prosecution for 59 days rather than conducting the barest minimum of investigation.

95. Plaintiff suffered damages as a result of Defendants' conduct.

96. To the extent that any policy or practice of the Town of Sahuarita was the moving force behind the violation, the Town is also liable under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978).

## COUNT VI: FAILURE TO TRAIN AND/OR SUPERVISE

97. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-96 as though set forth fully herein.

98. The Town of Sahuarita failed to adequately train and/or supervise officers George, Rivera, Villanueva, Collier, and Almodova.

99. In fact, the Town of Sahuarita apparently held an active shooter training shortly before this incident that may have been the driving force behind the constitutional violations set forth herein.

100. The Town's training, whether through its active shooter training, or its lack of adequate training and/or supervision was the driving force behind the violations of Plaintiff's rights alleged herein.

101. Plaintiff was damaged as a result of the Town's failure.

## COUNT VII: FALSE ARREST UNDER ARIZONA STATE LAW

102. Plaintiff hereby incorporates be reference the allegations contained in paragraphs 1-101 as though set forth fully herein.

103. Defendants arrested Plaintiff without a warrant and without probable cause.

104. Plaintiff was damaged as a result.

## COUNT VIII: MALICIOUS PROSECUTION UNDER ARIZONA STATE LAW

105. Plaintiff hereby incorporates herein by reference the allegations contained in paragraphs 1-104 as though set forth fully herein.

106. Defendants caused Plaintiff to be criminally prosecuted, and they did so with malice and without probable cause.

107. The prosecution ultimately terminated in Plaintiff's favor.

108. Plaintiff was damaged as a result.

## COUNT IX: DEFAMATION UNDER ARIZONA STATE LAW

109. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-108 as though set forth fully herein.

110. Defendant Almodova defamed Plaintiff when he not only caused to be published the fact of Plaintiff's unconstitutional arrest but also intimated that Plaintiff was a copycat mass shooter.

111. As a result of Almodova's conduct, Plaintiff's reputation was harmed, and it nearly cost Plaintiff his employment.

## COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER ARIZONA STATE LAW

112. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-111 as though set forth fully herein.

113. Defendants' conduct – arresting and prosecuting Plaintiff without probable cause, publishing details of his arrest along with his photograph in local news and likening Plaintiff to a mass shooter, and searching Plaintiff's person in the front of the Walmart down the road from his job in the town where he grew up – was extreme and outrageous.

114. Defendants intended that their conduct would cause Plaintiff substantial emotional distress or acted in reckless disregard of the near certainty that the conduct would produce substantial emotional distress.

115. Plaintiff did, in fact, suffer severe emotional distress as a result of Defendants' conduct.

## COUNT XI: VICARIOUS LIABILITY UNDER ARIZONA STATE LAW

116. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-115 as though set forth fully herein.

117. The Town of Sahuarita is vicariously liable under respondeat superior for the torts, as alleged in Counts VII through X, of its employees.

118. All individual Defendants were operating within the course of scope of their employment with the Town during all relevant events and time periods, and as such, the individual Defendants were "under the control" of the Town at the time each committed the torts outlined herein.

119. Plaintiff was damaged as a result of Defendants' actions, and the Town's failure to protect Plaintiff from its employees.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial in this case.

Wherefore, Plaintiff prays that this Court enter judgment in his favor and against the Defendants as follows:

1. For actual damages incurred as a result of Defendants' conduct;

2. For compensatory damages in a just and reasonable amount;

3. For punitive damages against the individual Defendants in an amount just and reasonable;

4. For Plaintiff's costs and attorney's fees pursuant to 42 U.S.C. § 1988;

5. For declaratory relief on all counts;

6. For specific declaratory relief finding that a failure to conduct a reasonably thorough investigation is a violation of the Fifth and Fourteenth Amendments;

7. For equitable relief, including but not limited to, the adoption of Town of Sahuarita policies that would help prevent a similar incident in the future and additional training of Town of Sahuarita police officers, as well as other equitable relief that this Court may deem just and reasonable.

DATED April 30, 2020.

/s/ Richard M. Wintory
Richard M. Wintory, Esq.
Attorney for Plaintiff