**JELLISON LAW OFFICES, PLLC**
36889 North Tom Darlington Drive
Suite B7, Box 2800, #304
Carefree, AZ 85377
Telephone: (480) 659-4244
Facsimile: (480) 659-4255
E-mail: jim@jellisonlaw.com
JAMES M. JELLISON, ESQ. #012763
Attorney for Defendants Town of Sahuarita, John George, Joseph A. Rivera, Jess Villanueva, Shannon Collier, and Samuel Almodova (referred to herein individually, or collectively as the "Sahuarita Defendants")

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Freedom Christopher Austin Pfaendler,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>Town of Sahuarita, John George, Joseph A. Rivera, Jess Villanueva, Shannon Collier, and Samuel Almodova,<br><br>　　　　　　Defendants. | Case No.: 4:20-cv-00188-JGZ-PSOT<br><br>**SAHUARITA DEFENDANTS' MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

Pursuant to Fed.R.Civ.P. 12(b)(6), the Sahuarita Defendants, through undersigned counsel, hereby submit their Motion To Dismiss Plaintiff's Complaint. The Defendants - sued in their individual capacities - assert qualified immunity as to all federal claims, and Defendant Town of Sahuarita seeks dismissal because, if this Court concludes that Plaintiff's Complaint fails to plausibly plead an arrest without probable cause, such a finding is dispositive of all federal claims against the Town. Additionally, as to the Town, Plaintiff has failed to plausibly plead a *Monell*. Finally, Plaintiff's Complaint fails to plausibly plead state law claims.

This Motion is supported by the attached Memorandum of Points & Authorities which is incorporated herein by this reference, and the Certificate of Conferral attached hereto. [Exhibit A].

**MEMORANDUM OF POINTS & AUTHORITIES**

On April 30, 2020, Plaintiff filed his Complaint against the Sahuarita Defendants. The Complaint contains constitutional claims alleging Fourth Amendment false arrest, illegal search, and malicious prosecution, and Fifth and Fourteenth Amendment malicious prosecution and failure to conduct a reasonably thorough investigation. (Doc. 1, Counts I-V). The Complaint also alleges several state law claims including failure to train and/or supervise, false arrest, malicious prosecution, defamation, intentional infliction of emotional distress, and *respondeat superior* liablity as to the Town. (Doc. 1, Counts VI-XI). Plaintiff requests general and compensatory damages, punitive damages, and declaratory relief. (Doc. 1, pg. 12). All individual Defendants are named in both their official and individual capacities.[1]

**I.     STANDARD OF REVIEW.**

The Court may dismiss a complaint for failure to state a claim under Fed.R.Civ.P 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). To survive a 12(b)(6) motion, a complaint must meet the requirements of Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957). Although a complaint challenged for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations omitted). Without

---

[1] For purposes of constitutional liability, official capacity claims are considered claims against the governmental entity that the named official serves. *See, Kentucky v. Graham,* 473 U.S. 159 (1985). Here, constitutional claims against the individuals in their "official capacities" are deemed claims against the Town of Sahuarita.

some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, pp. 94, 95 (3rd ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 674 (2009) (citing *Twombly,* 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal, id.* Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly,* 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950. The absence of plausibly stated facts showing unlawful municipal or individual conduct cannot support a plausible claim, or defeat a motion to dismiss. *See, Sanders v. Brown,* 504 F.3d 903, 910 (9th Cir. 2007). The Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286 (1986). "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders,* 504 F.3d at 910.

The plausible claim standard applies to *Monell*-based claims, *AE ex rel. Hernandez v. County of Tulare,* 666 F.3d 631, 637 (9th Cir. 2012), and state law claims. *Boisvert v. Lohan*, 617 Fed.Appx. 810 (9th Cir. 2015); *Foster v. Gentry*, 518 Fed.Appx. 594, 595, 2013 WL 2137571, at *1 (9th Cir. 2013). When a motion to dismiss raises qualified immunity, the court

assesses whether the operative complaint pleads a plausible claim that withstands qualified immunity. *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018).

## II. STATEMENT OF MATERIAL FACTS.

With the above standard of review applied, the following well-pled facts from the Complaint are recited. The Sahuarita Defendants' recitation of the alleged facts, however, should not be construed as agreement with those facts.[2]

On the morning of August 6, 2019, Plaintiff entered the Walmart store on South Nogales Highway in the Town of Sahuarita wearing motorcycle clothes and helmet. (Doc. 1, ¶¶ 18-19, 21). Plaintiff's motorcycle helmet was allegedly equipped with Bluetooth speakers, through which he was listening to music. (Doc. 1, ¶ 20). He moved through the Walmart gathering items as he shopped. (Doc. 1, ¶ 22). Unbeknownst to Plaintiff, the Walmart store manager instructed an assistant manager to call 911 because the manager was alarmed by Plaintiff's appearance. (Doc. 1, ¶ 23). Two separate Walmart employees also called 911. (Doc. 1, ¶ 24).

Sahuarita Police Officers George, Rivera, and Villanueva responded, with Officer Collier joining later. (Doc. 1, ¶ 26). While Plaintiff was placing purchased items in his backpack, the Officers approached him, with Officer George stating "Hey buddy, you got some I.D.?" (Doc.1, ¶¶ 28, 29). With no response, George stepped within inches of Plaintiff and addressed him. (Doc. 1, ¶ 30). Plaintiff claims his helmet prevented him from hearing George initially, but that he then removed his helmet, showed his receipt, and answered Officers' questions. (Doc. 1, ¶¶ 29, 31, 32).

The Walmart store manager informed the Officers that he had approached Plaintiff and asked him to remove his helmet, but was ignored. (Doc. 1, ¶ 34). The manager told Officers he followed Plaintiff around the store attempting to get his attention. (*Id.*). The Walmart manager told Officers he demanded Plaintiff leave the store, but that Plaintiff ignored him. (Doc. 1, ¶ 35).

---

[2] In reality, the Sahuarita Defendants deny there was any violation of Plaintiff's constitutional rights or commission of any tortious conduct.

Plaintiff claimed he did not hear the store manager ask him to remove his helmet, or noticed the store manager trying to get his attention. (Doc. 1, ¶ 36).

Plaintiff was arrested for trespassing. (Doc. 1, ¶ 48). In the Walmart parking lot, he was subjected to a post-arrest search of his pockets, as well as the removal of his jacket, shoes, and socks. (Doc. 1, ¶¶ 49-50). Plaintiff was booked into jail, where he was released 17 hours later. (Doc. 1, ¶ 53).

The next day, KOLD News 13 ran an article about the event, with Lt. Samuel Almodova, the Department's Public Information Officer, providing statements. (Doc. 1, ¶¶ 56, 57; Exhibit B hereto, August 7, 2019 KOLD News 13 article).[3] In the article, Almodova recounted the store manager telling Officers that customers were "kinda freaking out" by Plaintiff because of an El Paso incident over the weekend.[4] (Exhibit B). Lt. Almodova stated, "Just a strange call . . . After this weekend, people had more of a heightened sense." (Exhibit B). Almodova also stated, "You never know when you are going to start having copycats . . . I was on during this time and heard the radio traffic . . . my sense of awareness went up." (Exhibit B). Finally, noting the Department had been practicing active shooter training during the last three years, Almodova stated "We're hoping we never have to do anything, but if there is an event we will be ready for it." (Exhibit B).

//

//

---

[3] Because the article is specifically referenced in the Complaint, its inclusion here does not convert the motion to dismiss into a motion for summary judgment. A court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[4] This Court can take judicial notice that only three days before – on August 3, 2019 – 23 people were killed and 22 were injured during a shooting at an El Paso Walmart. Fed.R.Evid. 201; *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981, nt. 18 (9th Cir. 1999) (taking judicial notice of events in the public realm).

## III. LEGAL ANALYSIS.

### A. PLAINTIFF'S ALLEGATIONS ARE CONCLUSORY AND CANNOT SUSTAIN A PLAUSIBLE CLAIM UNDER ANY FEDERAL OR STATE LAW THEORY AGAINST ANY NAMED DEFENDANT.

Plaintiff's allegations as to all Sahuarita Defendants, under all theories, simply lump the Defendants together, not distinguishing anyone's actions except for those of Officer George and Lt. Almodova. For the reasons stated below, these recitals are insufficient to state valid legal claims. The absence of plausibly stated facts showing municipal or individual conduct giving rise to liability is insufficient to state a claim or defeat this motion to dismiss. *Sanders,* 504 F.3d at 910.

### B. ALL DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITIES ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S CONSTITUTIONAL CLAIMS.

#### 1. The Meaning and Application of Qualified Immunity.

Qualified immunity is not merely a defense. Rather, it provides a sweeping protection applicable during the entirety of the litigation process. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity is not something that a public official must earn, or have granted to him only after a full vetting of the facts. Rather, qualified immunity is "an *entitlement* not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (emphasis added); *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The U.S. Supreme Court has repeatedly stressed the importance of qualified immunity, the standards guiding its proper application, and the need to apply those standards faithfully. *See White v. Pauly*, 137 S.Ct. 548 (2017); *Mullenix v. Luna,* 136 S.Ct. 305 (2015); *Reichle v. Howards,* 566 U.S. 658 (2012). The Court has also implored that qualified immunity be resolved "at the earliest possible stage of the litigation." *Wood v. Moss,* 134 S.Ct. 2056, 2065 n.4 (2014).

"An official sued under §1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014); *see also Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011). "Qualified immunity shields federal and state officials from money damages *unless* a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735. (emphasis added); *see also*, *West v. City of Caldwell*, 931 F.3d 978, 982–83 (9th Cir. 2019). "While lower courts have discretion to decide which of the two prongs of qualified-immunity to tackle first," *see, al-Kidd*, 563 U.S. at 735, tackle them they must; because qualified immunity not decided is the same as immunity denied. *See, Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J. concurring in the judgment) (the basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery.").

Under the above standard, if a court "cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have ... acted as [the officer] did," then he is entitled to qualified immunity. *Mullenix,* at 310 (first alteration in original), *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It bears emphasizing that the analysis must always be trained on the particular facts and circumstances under review. *Brooks v. Clark Cty.*, 828 F.3d 910, 919–20 (9th Cir. 2016). "The dispositive question is 'whether the violative nature of [the officer's] *particular* conduct is clearly established.'" *Mullenix* at 308, *quoting al–Kidd*, 563 U.S. at 742. "This inquiry 'must be undertaken in light of the *specific context* of the case, not as a broad general proposition.'" *Id.* (emphasis added). "In other words, the plaintiff must point to prior case law that articulates a constitutional rule specific enough to alert *this* officer *in this case* that *his particular conduct* was unlawful." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). To achieve that kind of notice, the prior precedent must be "controlling"—

from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. *Id., citing Wilson v. Layne*, 526 U.S. 603, 617 (1999). "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not [generally act unconstitutionally], deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

The plaintiff bears the burden to supply the contextually specific, clearly established law. *Shafer v. Cty. of Santa Barbara,* 868 F.3d 1110, 1118 (9th Cir. 2017); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). And, the deciding court district court is required to apply the correct standard, including "carefully examin[ing] the specific factual allegations against each individual defendant." *Cunningham v. Gates,* 229 F.3d 1271, 1287 (9th Cir. 2000).

## 2. The Fourth Amendment, Arrest, and Probable Cause.

The Fourth Amendment requires an arrest be supported by probable cause, without regard to the severity of the underlying criminal offense. *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001); *see, Lacey v. Maricopa Cnty.,* 693 F.3d 896, 918 (9th Cir. 2012); *Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir. 1998). Probable cause for arrest exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed, by the person to be arrested. *Bailey v. Newland,* 263 F.3d 1022, 1031 (9th Cir. 2001) (*quoting Beck v. State of Ohio,* 379 U.S. 89, 91 (1964)); *see also, Hart v. Parks,* 450 F.3d 1059, 1065-66 (9th Cir. 2006*); see also*, *Williams v. Town of Greenburgh,* 535 F.3d 71, 78 (2nd Cir. 2008). "Probable cause does not require specific evidence of every element of an offense." *U.S. v. Thornton,* 710 F.2d 513, 515 (9th Cir. 1983). To determine whether an officer had probable cause for an arrest, the court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively

8

reasonable police officer, amount to' probable cause." *D.C. v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 586 (2018), *citing Maryland v. Pringle,* 540 U.S. 366, 371 (2003). "'Because probable cause "deals with probabilities and depends on the totality of the circumstances, [citation omitted] it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *Wesby, id., citing Illinois v. Gates,* 462 U.S. 213, 232 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby, id.* Probable cause "is not a high bar." *Kaley v. United States,* 571 U.S. 320, 333 (2014).

There is an important interrelation between Fourth Amendment probable cause and qualified immunity. In *Saucier v. Katz,* 533 U.S. 194, 206 (2001), the Court held, as to probable cause for arrest, officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances and, in those circumstances, courts will not hold that the officers violated the Constitution. *See also, Wesby,* 138 S.Ct. at 590-91. In other words, an officer sued for making an arrest without probable cause is entitled to qualified immunity if there is "arguable" probable cause for the arrest, which is a more lenient standard than probable cause itself. *Dunlap v. Anchorage Police Dep't*, 712 F. App'x 646, 648 (9th Cir. 2017); *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011); *see, Knight v. Jacobson,* 300 F.3d 1272, 1274 (11th Cir. 2002); *see also, Rogers v. City of Amsterdam,* 303 F.3d 155, 158 (2nd Cir. 2002). Because it is inevitable that law enforcement officials will, in some cases, reasonably but mistakenly conclude that probable cause for an arrest exists, in such cases those officials should not be held personally liable for false arrest or malicious prosecution under §1983. *Grider v. City of Auburn,* 618 F.3d 1240, 1257 (11th Cir. 2010). Accordingly, to defeat qualified immunity, a plaintiff must show not just the absence of probable cause, but the absence of arguable probable cause. *See Henry v. Bank of America Corp.,* 522 Fed.App. 406, 408 (9th Cir. 2013); *Rosenbaum,* 663 F.3d at 1076.

Plaintiff's Complaint is not silent as to the criminal violations that form the foundation of his arrest – they were trespass or disorderly conduct. A.R.S. § 13-1503(A) provides that "[a] person commits criminal trespass in the second degree by knowingly entering or remaining unlawfully in or on any nonresidential structure or in any fenced commercial yard." A.R.S. § 13-2904(A)(4) provides that a person commits the crime of disorderly conduct when, "with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person: . . . [m]akes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession." Instead of showing an absence of arguable probable cause, Plaintiff's Complaint alleges facts establishing probable cause. The Walmart store manager expressly told Officers that he made overt efforts to attract Plaintiff's attention, asked him to remove his helmet, and then demanded that he leave the premises. (Doc. 1, §§ 34, 35). Plaintiff's Complaint alleges that he followed none of these instructions. (*Id.*). Plaintiff, entering the Walmart in full motorcycle clothes, gear, and helmet three days after a mass murder at an El Paso Walmart, refusing to remove his helmet, and refusing to leave, resulted in three separate Walmart employees calling for police assistance, thereby disrupting store business. (Doc. 1, §§ 23, 24). Plaintiff's actions were sufficient to establish probable cause, or, at the very least, arguable probable cause.

Plaintiff alleges he did not comply because he was listening to music that was playing inside his helmet and, allegedly, did not hear the manager. (Doc. 1, ¶¶ 20, 29, 31, 32). However, the Officers were not required to credit that explanation. "Once probable cause has been established, a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.'" *Broam v. Bogan,* 320 F.3d 1023, 1032 (9th Cir. 2003), *citing Baker v. McCollan*, 443 U.S. 137, 145-46 (1979). Moreover, the evaluation of probable cause is not impacted by whether the arrestee's innocence may be established subsequently,

*Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966), but is dependent on what the arresting officer knew at the time of arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

### 3. The Fourth Amendment, Malicious Prosecution, and Probable Cause.

Both the federal and state claims for malicious prosecution depend on the fulfillment of the elements of those causes of action under Arizona law. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004). In Arizona, "[t]he essential elements of malicious prosecution are (1) a criminal prosecution, (2) that terminates in favor of plaintiff, (3) with defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 112 Ariz. 298, 300 (1975) (citation omitted); *Bird v. Rothman*, 128 Ariz. 599, 602 (App. 1981). Probable cause to institute the prosecution is "a complete and absolute defense." *Slade*, 112 Ariz. at 301. (citation omitted). As with false arrest, the overtly pled probable cause is fatal to Plaintiff's Fourth Amendment malicious prosecution claim.

### 4. The Fourth Amendment and Search Incident to Arrest.

While the Fourth Amendment generally prohibits searches without a warrant, the warrant requirement is subject to some well-established exceptions. *Flippo v. West Virginia,* 528 U.S. 11, 13 (1999); *Morgan v. United States,* 323 F.3d 776, 781 (9th Cir. 2003). Among these is the exception for a search incident to arrest. The search-incident-to-arrest exception permits law enforcement officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to the arrest. *Chimel v. California,* 395 U.S. 752, 762–63 (1969). For example, law enforcement officers may also search, contemporaneously with an arrest, the passenger compartment of an automobile and all containers found in the compartment. *New York v. Belton,* 453 U.S. 454, 460–616 (1981). Such searches have long been considered valid, despite the absence of a warrant,

because of the need to remove any weapons that threaten the arresting officers or bystanders and the need to prevent concealment or destruction of evidence. *Chimel,* 395 U.S. at 763.

The Officers' alleged search of Plaintiff which included a search of his pockets, and the removal of his jacket, shoes, and socks, is a constitutionally permissible search incident to arrest.

### 5. Fifth and Fourteenth Amendment Malicious Prosecution or Unreasonable Investigation.

While a public official may have a constitutional duty to refrain from intentionally withholding exculpatory evidence, *see, Carrillo v. County of Los Angeles,* 798 F.3d 1210, 1228 (9th Cir. 2015), the Sahuarita Defendants are unaware of any established constitutional principle that requires them to review the Walmart surveillance footage on a certain timetable. What is clear from Plaintiff's Complaint is that the prosecution was provided the footage and, according to the Complaint, charges were allegedly dismissed after review. (Doc. 1, § 93). There are no allegations that Defendants intentionally withheld material, exculpatory information or presented material, false information in the course of their investigation, or Plaintiff's prosecution.

### 6. The Allegations as to Each Named Individual.

Even if assessed collectively, there is no constitutional violation alleged because the Complaint shows probable cause – or at least arguable probable cause – which supports the arrest and prosecution, and any search incident to arrest. Additionally, Plaintiff has not alleged an intentional withholding of material, exculpatory information or an intentional fabrication of material evidence. But, that is not enough for the qualified immunity analysis. In assessing qualified immunity, the deciding court district court is required to apply the correct standard, including "carefully examin[ing] the specific factual allegations against each individual

defendant." *Cunningham v. Gates,* 229 F.3d 1271, 1287 (9th Cir. 2000). An examination of the allegations for each individual is necessary, and shows no violation of clearly established law.

### a. Officer John George

Fact allegations as to Officer George appear in paragraphs 3, 4, 26, 28, 29, 30, 31, 42, 43, and 44 of the Complaint. (Doc. 1). While Plaintiff was placing purchased items in his backpack, the Officers approached him, with Officer George stating "Hey buddy, you got some I.D.?" (Doc.1, ¶¶ 28, 29). With no response, George stepped within inches of Plaintiff and addressed him. (Doc. 1, ¶ 30). Plaintiff claims his helmet prevented him from hearing Officer George initially, but that he then removed his helmet, showed his receipt, and answered Officers' questions. (Doc. 1, ¶¶ 29, 31, 32). After the store manager provided his information, Officer George allegedly told Plaintiff to "reach down between [his] legs and pull your head out of your ass!" and to "listen to learn and not to respond." (Doc. 1, ¶¶ 42, 43). Soon, George told Plaintiff to stop talking altogether. (Doc. 1, ¶ 44). No facts as to George plausibly allege he arrested Plaintiff without probable cause or arguable probable cause, conducted an unconstitutional post-arrest search, maliciously prosecuted Plaintiff, or violated Plaintiff's Fifth or Fourteenth amendment rights vis-à-vis the investigation or ensuing prosecution. This alleged conduct does not violate the constitution, much less clearly established constitutional law.

### b. Officer Joseph A. Rivera

Fact allegations as to Officer Rivera appear in paragraphs 5, 6, and 26 of the Complaint. (Doc. 1). The only well-pled fact directed at Officer Rivera is that he responded to the Walmart. (Doc. 1, § 26). No facts as to Rivera plausibly allege he arrested Plaintiff without probable cause or arguable probable cause, conducted an unconstitutional post-arrest search, maliciously prosecuted Plaintiff, or violated Plaintiff's Fifth or Fourteenth amendment rights vis-à-vis the investigation or ensuing prosecution. This alleged conduct does not violate the constitution, much less clearly established constitutional law.

//

### c. Officer Jess Villanueva

Fact allegations as to Officer Villanueva appear in paragraphs 7, 8, and 26 of the Complaint. (Doc. 1). The only well-pled fact directed at Officer Villanueva is that he responded to the Walmart. (Doc. 1, § 26). No facts as to Villanueva plausibly allege he arrested Plaintiff without probable cause or arguable probable cause, conducted an unconstitutional post-arrest search, maliciously prosecuted Plaintiff, or violated Plaintiff's Fifth or Fourteenth amendment rights vis-à-vis the investigation or ensuing prosecution. This alleged conduct does not violate the constitution, much less clearly established constitutional law.

### d. Officer Shannon Collier

Fact allegations as to Officer Collier appear in paragraphs 9, 10, and 26 of the Complaint. (Doc. 1). The only well-pled fact directed at Officer Collier is that he responded to the Walmart. (Doc. 1, § 26). No facts as to Collier plausibly allege he arrested Plaintiff without probable cause or arguable probable cause, conducted an unconstitutional post-arrest search, maliciously prosecuted Plaintiff, or violated Plaintiff's Fifth or Fourteenth amendment rights vis-à-vis the investigation or ensuing prosecution. This alleged conduct does not violate the constitution, much less clearly established constitutional law.

### e. Lieutenant Samuel Almodova

The fact allegations involving Lieutenant Almodova relate only to his statements to the press. (Doc. 1, ¶¶ 57, 58). Lt. Almodova does not appear to be a Defendant as to any federal claim, but, if Plaintiff considers him to be, the fact allegations do not support any constitutional violation, much less a violation of clearly established law.

### C. PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE *MONELL* CLAIM AGAINST THE TOWN.

There are limited scenarios in which a municipality may be liable for constitutional violations under §1983: 1) when implementation of a government's official policies or established customs inflicts the constitutional injury; 2) pervasive and deliberately indifferent failure to train; 3) final policy-maker unconstitutional action; or 4) final policy-maker

ratification of a subordinate's unconstitutional behavior. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (*quoting Monell v. Dept. of Soc. Serv. of the City of New York,* 436 U.S. 658, 708 (1978)), *overruled on other grounds, Castro v. County of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016). Even then, municipalities cannot be held liable when their officials have inflicted no constitutional injury. *See, City of L.A. v. Heller,* 475 U.S. 796, 799 (1986) (per curiam); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015). Finally, a municipal entity cannot be held liable in a §1983 action on a theory of *respondeat superior*. *Monell,* 436 U.S. at 691.

As demonstrated above, Plaintiff's Complaint fails the basics – no constitutional harm has been plausibly pled. Moreover, none of the above theories are supported by the facts alleged against the Town of Sahuarita. Plaintiff's Complaint contains no fact allegations showing constitutional injury caused by a municipal policy, practice or custom; pervasive or deliberately indifferent failure to train; or final policy-maker action or ratification. The scant allegation that the Town provided active shooter training does not plausibly allege a failure to train. Dismissal is appropriate where there are only conclusory allegations in support of municipal liability. *Johnson v. Brady*, 2015 WL 3774283, at *4 (D.Ariz. 2015); *see also, J.O. ex rel. Overstreet v. City of Phoenix*, 2013 WL 623601, at *3 (D.Ariz. 2013). That is all there is here.

### D. PLAINTIFF HAS FAILED TO PLEAD PLAUSIBLE STATE LAW CLAIMS.

#### 1. Plaintiff Has Failed to Plead a Plausible Failure to Train or Supervise Claim.

The general rule concerning negligent hiring and supervision of employees is found in Restatement (Second) of Agency, s 213:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

15

(a) in giving improper or ambiguous orders of (sic) in failing to make proper regulations; or

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others: (sic)

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."

Comment d states in part:

"One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation."

Of course, "[i]f the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee." *Kuehn v. Stanley,* 208 Ariz. 124, 130 (App. 2004). Plaintiff provides no well-pled facts that the Officers were given inappropriate orders, were improperly supervised, or not correctly trained. The sole allegation that active shooter training was provided does not state a plausible claim. Finally, Plaintiff has failed to plausibly plead an underlying state law tort that supports a failure to train or supervise claim.

### 2. Plaintiff Has Pled Probable Cause Which Defeats Any Claim For Unlawful Arrest or Malicious Prosecution Under State Law.

Probable cause constitutes a complete and absolute defense to an action for false arrest, or malicious prosecution. *See, e.g., Slade,* 112 Ariz. at 301. Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court. *Murphy*

*v. Russell*, 40 Ariz. 109 (1932). Plaintiff's Complaint actually pleads the existence of probable cause, eliminating any state law false arrest or malicious prosecution claim.

### 3. Plaintiff Has Failed to Plead a Plausible Claim for Defamation.

"'To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation.'" *Turner v. Devlin,* 174 Ariz. 201, 203–04 (1993), *quoting Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 341 (1989). Almodova's only statement as to Pfaendler is that he was charged with disorderly conduct and booked in the jail. (Exhibit B). Plaintiff pleads that these events are fact. Almodova's general comments about El Paso, the potential for copycat shooters, and a heightened sense of alert are not false statements about Plaintiff.

### 4. Plaintiff Has Failed to Plead a Plausible IIED Claim.

A plaintiff suing for intentional infliction of emotional distress must prove the defendant caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result. *Ford v. Revlon, Inc.,* 153 Ariz. 38, 43 (1987); *Watkins v. Arpaio*, 239 Ariz. 168, 170–71 (App. 2016) (also applying the one-year statute, and discovery standard, for public entities and employees to IIED claim). In other words, the Defendants' role in the investigation, arrest, search, or prosecution arises to conduct that is plausibly "atrocious," "beyond all bounds of decency," or would call upon an average community member to declare, "outrageous!" "It is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief." *Patton v. First Fed. Sav. and Loan Ass'n of Phoenix,* 118 Ariz. 473, 476, 578 P.3d 152, 155 (1978). Responding to a 911 call, investigating under lawful authority, and obtaining and acting upon facts showing probable cause is not atrocious, beyond all bounds of decency, or cries "outrageous!" The intentional infliction claim fails as a matter of law. *See Rondelli v.*

*Pima County,* 120 Ariz. 483, 490 (App. 1978) (rejecting intentional infliction of emotional distress claim as a matter of law by an appellant who claimed he was stereotyped as "Mafiosi," detained with his family for an hour without explanation, searched and handcuffed outside his car in full view of [his] neighbors and friends, treated like a dangerous criminal for failing to file a tax return, and falsely arrested).

**IV. CONCLUSION.**

For all of these reasons, Plaintiff's Complaint must be dismissed in its entirety as to the Sahuarita Defendants.

DATED this 24th day of July, 2020.

JELLISON LAW OFFICES, PLLC

By: s/ James M. Jellison
*Attorneys for the Sahuarita Defendants*

CERTIFICATE OF MAILING

I hereby certify that on July 24, 2020, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic filing to the following registrants or by U.S. and electronic mail if not a registrant:

Richard Wintory
1 South Church Avenue, Ste. 1200
Tucson, Arizona 85701
Richard.Wintory@nextchapterlaw.com
*Attorney for Plaintiff*

s/Judy Phillips