**Richard M. Wintory**
1 South Church Avenue, Suite 1200
Tucson, Arizona 85701
(520) 448.5051
State Bar No. 022768
Richard.Wintory@nextchapterlaw.net
Attorney for Plaintiff Freedom Pfaendler

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Freedom Christopher Austin Pfaendler,<br><br>Plaintiff,<br><br>vs.<br><br>Town of Sahuarita, John George, Joseph A. Rivera, Jess Villanueva, Shannon Collier, and Samuel Almodova,<br><br>Defendants. | Case No. 4:20-cv-00188-JGZ<br><br>**PLAINTIFF'S RESPONSE TO SAHUARITA DEFENDANTS' MOTION TO DISMISS**<br><br>(Assigned to Hon. Jennifer G. Zipps) |

Comes now, Plaintiff by and through undersigned counsel, hereby responds to Sahuarita Defendants' Motion to Dismiss, as follows:

I. <u>Plaintiff's Complaint meets the standard set by Rule 8.</u>

While Defendants recite all the correct Supreme Court case law governing this Court's application of Rule 8, they fail to give credence to a vital element of the Rule 8 pleading standard: Plaintiff is entitled to have not only his well-pleaded facts taken at face value but also to all reasonable inferences that may be drawn from his Complaint. See *Newcal Indus v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). Further, Rule 8 remains unmodified by the Court's decisions in *Twombly* and *Iqbal*;[1] the purpose of the federal court pleading standard is simply to ensure

---
[1] What *Twombly* and *Iqbal* modified was the standard that trial courts use to evaluate claims for plausibility, thus opening an avenue for the early dismissal of claims that were quite clearly devoid of merit or upon which a plaintiff could not prevail even where the allegations were true, characterizations that cannot be applied here.

1

that defendants have fair notice of the nature of the claims being brought against them. *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). Finally, Defendants move for summary judgment based on qualified and sovereign immunity. In this situation, Plaintiff is also entitled to all reasonable inferences that would operate to overcome the affirmative defense. See *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). And qualified immunity may only be granted at this stage of the litigation is it established by the facts alleged in the complaint itself. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

Here, Mr. Pfaendler has provided detailed factual allegations that, if proven, would entitle him to relief. The complaint does not contain bare assertions of liability, present an implausible scenario, or rely on mere conjecture.

II. Defendants are not entitled to immunity.

Defendants raise both qualified and sovereign immunity in their Motion to Dismiss. However, Mr. Pfaendler has adequately alleged both an underlying constitutional violation that was clearly established at the time of the incident as well as the Town's inadequate training and supervision as the likely moving force behind the violation. Additionally, Mr. Pfaendler's Complaint raises a claim for equitable relief, and qualified immunity does not insulate defendants from claims for equitable relief.

A. The Complaint adequately pleads a lack of probable cause for Mr. Pfaendler's arrest and subsequent prosecution.

The Complaint, and all reasonable inferences that flow from it, paint a stark portrait of abuse by the Sahuarita police officers. The existence of probable cause is based on an analysis of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 232 (1983). To be sure, Mr. Pfaendler, without the benefit of discovery, cannot know all facts known to the officers at the time of his arrest. But what is apparent is that it was not reasonable for the officers to simply rely on the Walmart

manager's description of events when they themselves were witness to contradictory evidence.

First, the Walmart manager lacked credibility in his recount of events. (Complaint, ¶¶ 33-35, 37). His story changed throughout the interaction with officers, and he was emotionally unhinged at times during the exchange. *Id*. While Courts have held that a changing witness story *alone* does not negate probable cause,[2] the inconsistent nature of the manager's description is part of the totality of the circumstances analysis.

Second, Mr. Pfaendler provided officers with an explanation for why he was wearing his helmet in the store, why he would not have heard the manager if he'd spoken to him, and assuring the officers that, in fact, he did not hear the manager speak to him or try to get his attention. (Complaint, ¶¶ 36-37). And while Defendants are correct that the officers "were not required to credit that explanation," neither were they free to discount it and all the evidence consistent with it while still claiming probable cause.[3]

In other words, Mr. Pfaendler's denial was part of the totality of the circumstances. More importantly, Mr. Pfaendler's explanation was consistent with the officers' own observations as well as with the description that one Walmart employee provided over the phone to the 911 dispatcher. When Defendant George first approached Mr. Pfaendler, the latter was preoccupied with putting his Walmart purchases into his backpack. (Complaint, ¶¶ 27-28). With his back to the store and

---

[2] See *Lallemand v. University of Rhode Island*, 9 F.3d 214, 216 (1st Cir. 1993) (Probable cause may be based on a single eye witness account despite inconsistencies in the description of the suspect). Of course, here, the changing nature of the manager's story goes far beyond the common human error of misjudging a suspect's height.)

[3] Plaintiff notes that, at this juncture, officers have offered no explanation for the decision to accept the manager's changing description of events and reject Mr. Pfaendler's. While courts have found that such a decision, based on credibility determinations, can be reasonable and not serve to negate probable cause, they have generally done so in the context of an explanation. But this a Motion to Dismiss, the record contains no information about the basis for the officers' decisions, and Plaintiff is entitled to all reasonable inferences that may be drawn from his facts as pled.

his helmet on, Mr. Pfaendler only realized the officers were there when Defendant George addressed him in a sharp, command voice from inches away. (Complaint, ¶¶ 28-31). Further, Mr. Pfaendler immediately complied with a request to view his receipt, which was consistent with the call to 911 by one Walmart employee, who described Mr. Pfaendler as simply shopping and placing his items on the conveyor belt for purchase.[4] (Complaint, ¶¶ 25, 32).

Third, each of the responding officers was certainly familiar with Walmart and its security system. As one of the largest employers in the Town, Walmart would have a well-established working relationship with the police department there. This reality makes the officers' failure to review the readily available Walmart surveillance footage inexcusable. In fact, in *Clipper v. Takoma Park, Md.*, the Fourth Circuit upheld a jury verdict in a § 1983 case finding that an officer's failure to review such footage and interview reasonably available witnesses was unreasonable. 876 F.2d 17 (4th Cir. 1989). As a result, the Court, analyzing the totality of the circumstances, found no probable cause to support the arrest, noting that it was not a single fact that negated probable cause but the accumulation of facts. *Id.* at 20.

Moreover, officers, particularly Defendant George, displayed the sort of hostility toward Plaintiff throughout their interaction that would lend itself to an inference that Plaintiff's arrest and subsequent prosecution were not only unsupported by probable cause but also motivated by malice. (Complaint, ¶¶ 40-47).

Though officers told Plaintiff he was being arrested for trespassing, he was ultimately charged with disorderly conduct. (Complaint, ¶¶ 48, 60). Under the totality of the circumstances, no reasonable officer could have found probable cause for either charge. It was clear from Mr. Pfaendler's description, from the description provided to the 911 dispatcher, and from the corroborating evidence, including

---

[4] Without conducting discovery, Plaintiff cannot know how much of what the dispatcher learned was communicated to the officers, but it is reasonable to infer that Defendants were aware of the content of the employee's 911 call.

officers' own observations, that Mr. Pfaendler simply stopped in Walmart to purchase lunch items on his way to work. The *only* contradictory evidence came from a manager whose own description of the event changed from one moment to the next. Therefore, when considered together, the manager's statement alone is insufficient to support a finding of probable cause.

Finally, these are merely the facts known to Mr. Pfaendler at this early stage of litigation. He anticipates discovering additional information through the discovery process, an effort he is entitled to undertake, having met the threshold under Rule 8 to plead a plausible case under 42 U.S.C. § 1983.

B. The Complaint adequately pleads a Fourth Amendment violation for officers' search of Mr. Pfaendler in the Walmart parking lot.

The search of Mr. Pfaendler's person in the Walmart parking lot is only a permissible search incident to arrest if Mr. Pfaendler's arrest itself was lawful. Plaintiff has adequately alleged that his arrest was not supported by probable cause.

C. The Complaint adequately pleads a due process violation under the Fifth and Fourteenth Amendments for failure to conduct a reasonably thorough investigation.

In *Amrine v. Brooks*, the Eighth Circuit clarified its case law regarding a due process claim for a police officer's failure to conduct a reasonably thorough investigation. 522 F.3d 823, (8th Cir. 2008). There, the Court held that substantive due process is violated where officials "have the opportunity to deliberate various alternatives" prior to making a decision and proceed with reckless disregard sufficient to shock the conscience. *Id.* at 823-24. In such an analysis, the recklessness standard is subjective. *Id*. The Ninth Circuit cited *Amrine* in its discussion of substantive due process (admittedly in the context of a Brady allegation) in a decision upholding a denial of summary judgment for government inspectors in *Tennison v. City and County of San Francisco*, 570 F.3d 1078,1089 (9th Cir. 2009).

Here, a curiously long time passed between Plaintiff's request to the Town Prosecutor for the Walmart surveillance video and her receipt of it from the police department.[5] In light of the hostility with which Mr. Pfaendler was treated by Defendant George and the lack of probable cause for his arrest, it might be inferred that police delayed providing the video to their prosecutor. (See First Amended Complaint, filed substantially simultaneously herewith). But even without inferring that fact, Mr. Pfaendler has adequately alleged conscious-shocking behavior by Defendant George and, to a lesser extent, the other officers. It is apparent that officers initially intended to give Mr. Pfaendler a citation and release him.[6] However, the interaction became strangely hostile, and Mr. Pfaendler's Complaint allows one to logically infer that Defendant George worked himself up into such a state of indignation that he recklessly disregarded the facts negating probable cause, recklessly refused to view the readily available surveillance footage, recklessly refused to consider the information he personally observed and/or heard from the dispatcher, and the end result of that disregard was Mr. Pfaendler's unconstitutional arrest and prosecution.

D. <u>The named officers were all integral participants in Mr. Pfaendler's unconstitutional arrest, search, and subsequent prosecution.</u>

In the Ninth Circuit, officers who are "integral participants" in a constitutional violation may be found liable for it. *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004). In *Boyd*, every officer who participated in the deployment of a flash bang was held to have been an integral participant, a designation that requires an officer be more than a bystander and instead a play a role in the execution of the law enforcement activity. *Id.* at 780. Here, the officers who responded to the scene all

---

[5] Mr. Pfaendler remains haunted by the uncertainty of what his fate would have been had he not been able to hire an attorney to push the prosecutor to obtain and review the surveillance footage. (See First Amended Complaint).
[6] While this would still have constituted a violation of Mr. Pfaendler's Fourth Amendment rights, the damages that he suffered as a result would have been dramatically reduced.

6

played an integral role in Mr. Pfaendler's arrest and search without probable cause. Further, the Ninth Circuit recognizes an affirmative duty to intervene by police officers who witness unconstitutional behavior and are in a position to address it. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000). And finally, without discovery, Mr. Pfaendler cannot be certain which of the officers undertook specific actions related to the violations of his Constitutional rights. For instance, officers turned off the audio on their body worn cameras to discuss Mr. Pfaendler's arrest and, presumably, the charge upon which he was arrested without probable cause. Every officer who participated in that charging decision is liable for the Fourth Amendment violation that resulted from it.

> E. <u>Because the Complaint adequately pleads an underlying Constitutional violation, it also plausibly raises the spectre that the Town's policies and practices were the moving force behind the violation.</u>

To fully understand the interplay between the Town's policies and procedures and the treatment inflicted upon Mr. Pfaendler, he will have to be permitted discovery.[7] But even at this early juncture, Mr. Pfaendler has identified a lack of adequate training and supervision as the likely moving force behind the violations. More specifically, Mr. Pfaendler identifies the active shooter training as the probable genesis of the violation of his Constitutional rights based on the timing of the training and the statements made to the newspaper by Defendant Almodova.[8] The issue with the active shooter training is not that the training occurred; it is that the *nature* of the training resulted in the Sahuarita Police Department treating a man buying a banana like a mass murderer.

---

[7] It is through the discovery process that Plaintiff anticipates learning whether the Town has a pattern of tolerating similar constitutional violations by its officers and whether that tacit approval of such behavior emboldened these officers to act as they did. Similarly, it is through discovery that Plaintiff anticipates learning whether any of the defendants were hired by Sahuarita despite a record of similar violations.
[8] Plaintiff notes that this is a far more specific, developed theory of municipal liability than that normally posited by plaintiffs at this state of § 1983 litigation.

7

### F. Qualified immunity does not apply to claims for equitable relief.

In addition to his claims for money damages, Mr. Pfaendler's First Amended Complaint contains a claim for equitable relief. Qualified immunity does not apply to claims for equitable relief, so even if this Court determined that Defendants were entitled to qualified immunity, Plaintiff's claims for equitable relief would proceed.[9] See *Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009). Mr. Pfaendler requests equitable relief for two reasons: 1) Because he still lives in the area, still rides his motorcycle to work in full motorcycle gear, and still stops at other area stores to purchase lunch items without removing his helmet, Mr. Pfaendler retains the fear that he will again be arrested without probable cause for no crime other, seemingly, than riding a motorcycle; and 2) To the extent that this Court finds that a cause of action for failure to conduct a reasonably thorough investigation has not been clearly established in this jurisdiction, a claim for equitable relief requires a pronouncement regarding the constitutionality of the conduct at issue here. In the wake of *Pearson*, appeals courts dramatically altered their qualified immunity analysis to increase judicial efficiency. See *Qualified Immunity After Pearson v. Callahan*, 59 UCLA L. Rev. 468, 491 (2011). The result is a terrifying catch-22 for civil rights plaintiffs: to overcome qualified immunity, the law must be clearly established, but in deciding qualified immunity, courts are no longer required to establish the contours of the law. Therefore, if *Pearson's* abrogation of the two-step analysis is the problem, claims for equitable relief are the answer.[10]

In fact, the amount of time that passed before Mr. Pfaendler's charges were dismissed coupled with the lack of acknowledgment of wrongdoing by anyone at the Town of Sahuarita, leaves Mr. Pfaendler with the conviction that Town officials and

---

[9] While this arguably defeats the purpose of qualified immunity, Courts have theorized that claims for equitable relief would serve as a lesser distraction for public officials than claims for money damages. See *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991).

[10] Indeed, the availability of claims for equitable relief was part of the Court's explanation in *Pearson* for the lack of concern over the likely effects of abrogating the two-step inquiry.

8

the officers involved do not recognize the unconstitutionality of their conduct; such myopathy leads to the kind of repetitive constitutional violations that equitable relief is designed to prevent.

### III. Plaintiff's state law claims are adequately articulated.[11]

In addition to his claims for false arrest and malicious prosecution, Plaintiff brings state law claims for defamation/false light invasion of privacy[12] and intentional infliction of emotional distress (IIED). Both are adequately pled.

Despite Defendant Almodova's effort to dissect the information and comments he gave to the newspaper, the clear impression left by the information is that the Sahuarita Police Department foiled a would-be mass murderer, Mr. Pfaendler. This is precisely what the state law tort of false light invasion of privacy is designed to address. To prevail on such a claim, a plaintiff must demonstrate that the defendant knowingly or with reckless disregard for the truth "gave publicity to information placing the plaintiff in a false light" and that said false light would be "highly offensive to a reasonable person." *Desert Palm Surgical Group, P.L.C. v. Petta*, 236 Ariz. 568, ¶ 29 (App. 2015). Here, Mr. Pfaendler has pled facts sufficient to show that Lt. Almodova painted him in a false light and that he did so with reckless disregard for the truth. Mr. Pfaendler nearly lost his job as a result.

Further, Mr. Pfaendler has alleged a series of violations of his constitutional rights which, coupled with the false light in which he was painted by Lt. Almodova, could rise to the level of extreme and outrageous conduct. It is the cumulative effect of Defendants' actions – shouting him down in Walmart, arresting him without probable cause, stripping him of his shoes and socks in the store parking lot near

---

[11] Plaintiff's recitation of the lack of probable cause under subsection II(A) and discussion of *Monell* liability are equally applicable to his state law claims for false arrest and malicious prosecution as well as the imputation of the officers' conduct to the Town, so Plaintiff will not repeat the same analyses but rather incorporate it here by reference.

[12] Mr. Pfaendler's First Amended Complaint alleges the False Light Invasion of Privacy for the first time.

9

his job, leaving him in jail for 17 hours, and making him look like a would-be terrorist to the newspaper – that is so soul-crushingly outrageous.

### Conclusion

Mr. Pfaendler has met the pleading standard set forth by Rule 8. He has provided well-pled facts and, while there are always gaps in a plaintiff's knowledge at this juncture, has painted a clear picture of the violations of his civil rights at the hands of Defendants. Mr. Pfaendler is entitled to prove out his claims, and Defendants' Motion to Dismiss should be denied.

DATED August 21, 2020.

/s/ Richard M. Wintory
Richard M. Wintory, Esq.
Attorney for Plaintiff

**CERTIFICATE OF SERIVCE**

I hereby certify that on August 21, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

James M. Jellison
Jellison Law Offices, PLLC
36889 North Tom Darlington Drive
Suite B7, Box 2800, #304
Carefree, Arizona 85377
    Attorney for Defendants

By /s/ Richard M. Wintory