JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Freedom Christopher Austin Pfaendler,<br><br>Plaintiff,<br><br>v.<br><br>Town of Sahuarita, et al.,<br><br>Defendants. | No.   CV 20-00188-TUC-JCH<br><br>**AMENDED ORDER** |

Plaintiff Freedom Christopher Austin Pfaendler, through counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983.  Defendants Town of Sahuarita and Officers John George, Joseph A. Rivera, Jess Villanueva, Shannon Collier, and Samuel Almodova have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 18.)  Plaintiff opposes the Motion.  (Doc. 23.)

The Court will grant the Motion to Dismiss and will dismiss the Complaint without prejudice.

**I.     Complaint**

Plaintiff asserts the following relevant facts in the Complaint:

On August 6, 2019, Plaintiff was commuting to work on his motorcycle when he stopped to purchase some items for his lunch at a Walmart store.  (Doc. 1 at 3 ¶ 18.)  Plaintiff went into Walmart wearing his motorcycle clothes and helmet.  (*Id.* ¶ 19.)  Plaintiff's motorcycle helmet was equipped with Bluetooth speakers, which were playing music while he shopped in Walmart.  (*Id.* ¶ 20.)  Plaintiff moved through Walmart

gathering items he intended to purchase. (*Id.* ¶ 22.) Unbeknownst to Plaintiff, the store manager instructed an assistant manager to call 911. (*Id.* ¶ 23.)

While Plaintiff shopped, two separate Walmart employees called 911, but no one approached Plaintiff or made an effort to get his attention. (*Id.* ¶ 24.) When asked by the 911 operator what Plaintiff was doing, one of the Walmart employees reported that he appeared to be shopping, later updating her report to add that Plaintiff appeared to have put items for purchase on the conveyor belt in a checkout line. (*Id.* ¶ 25.)

Defendants George, Rivera, and Villanueva responded to the Walmart and were later joined by Defendant Collier. (*Id.* ¶ 26.) Meanwhile, Plaintiff paid for his items without incident and paused at a seating area to put his purchases into his backpack, with his back to the rest of the store. (*Id.* ¶ 27.) Plaintiff was storing the items in his backpack when the officers approached him, and Defendant George said, "Hey buddy, you got some I.D.?" (*Id.* ¶ 28.) Although Defendant George was only two feet behind Plaintiff, Plaintiff did not hear the question through his motorcycle helmet. (*Id.* ¶ 29.) Defendant George stepped within inches of Plaintiff and addressed him in a projected, command voice, and Plaintiff looked up. (*Id.* at 4 ¶ 30.)

Plaintiff cooperated with the officers' requests to remove his helmet, show his receipt, and answer their questions. (*Id.* ¶ 32.) Initially, the Walmart manager told officers that he had approached Plaintiff and asked him to remove his helmet and that Plaintiff ignored the request. (*Id.* ¶ 33.) The manager later told officers that he had followed Plaintiff around the store attempting to get his attention. (*Id.* ¶ 34.) The manager ultimately told the officers that he had demanded Plaintiff leave the store, only to be ignored. (*Id.* ¶ 35.) Plaintiff explained that he never heard the manager ask him to remove his helmet and did not notice the manager trying to get his attention. (*Id.* ¶ 36.) The officers allowed the store manager to remain in the area where they were questioning Plaintiff and allowed the manager to interject as Plaintiff disputed the manager's "evolving" description. (*Id.* ¶ 37.)

Initially, the officers were going to give Plaintiff a lecture and/or trespass him from

the store or issue him a citation and release him from the store. (*Id.* ¶ 40.) However, the tenor of the officers' interaction with Plaintiff changed and grew increasingly hostile. (*Id.* at 5 ¶ 41.) Defendant George ordered Plaintiff to "reach down between [his] legs and pull your head out of your ass!" (*Id.* ¶ 42.) Accusing Plaintiff of arguing with him, Defendant George demanded that Plaintiff "listen to learn and not to respond." (*Id.* ¶ 43.) Defendant George then ordered Plaintiff to stop talking altogether. (*Id.* ¶ 44.)

Moments later, another officer began asking Plaintiff questions. (*Id.* ¶ 45.) Plaintiff pointed to Defendant George, who had told Plaintiff not to speak, as a non-verbal request for permission, but he received no response. (*Id.* ¶ 47.) The officers "discontinued their course of action" and, rather than trespassing Plaintiff or citing and releasing him, officers conducted a full, custodial arrest. (*Id.* ¶ 47.) At the time the officers decided to arrest Plaintiff, they told Plaintiff he was being arrested for trespassing. (*Id.* ¶ 48.)

The officers conducted a search incident to Plaintiff's arrest. (*Id.* ¶ 49.) The officers checked Plaintiff's pockets and removed his jacket, shoes, and socks in the parking lot while other patrons passed. (*Id.* ¶ 50.) Plaintiff was humiliated by the conduct to which he was subjected, but he cooperated with the officers. (*Id.* ¶¶ 51-52.) Plaintiff was booked into jail, where he remained for 17 hours. (*Id.* ¶ 53.) Plaintiff was ultimately charged with one count of disorderly conduct. (*Id.* ¶ 60.)

The day after Plaintiff's arrest, a news station and local newspaper ran an article about the arrest, with Plaintiff's picture prominently displayed. (*Id.* at 6 ¶ 56.) Defendant Almodova provided the information regarding Plaintiff's arrest to the news station and "likened Plaintiff to a copycat mass shooter," a comparison that the newspaper included in the article. (*Id.* ¶¶ 57-58.) On October 18, 2019, the Sahuarita Town Prosecutor dismissed the charge against Plaintiff. (*Id.* ¶ 62.)

Plaintiff alleges in Counts I and II that Defendants George, Rivera, Villanueva, and Collier arrested Plaintiff without probable cause and conducted a warrantless search of Plaintiff's person. (*Id.* at 6-7 ¶¶ 63-74.) In Counts III and IV, Plaintiff claims he was maliciously prosecuted and detained without probable cause in violation of the Fourth

Amendment and the Fifth and Fourteenth Amendments, respectively. (*Id.* at 7-8 ¶¶ 75-87.) Plaintiff asserts in Count V that officers failed to conduct a reasonably thorough investigation, resulting in Plaintiff's arrest and prosecution without probable cause. (*Id.* at 9 ¶¶ 88-96.) In Count VI, Plaintiff alleges that Defendant Town of Sahuarita failed to adequately train and/or supervise Defendants George, Rivera, Villanueva, Collier, and Almodova. (*Id.* at 10 ¶¶ 97-101.) Plaintiff asserts in Counts VII through XI state-law claims for false arrest, malicious prosecution, defamation, intentional infliction of emotional distress, and vicarious liability, respectively. (*Id.* at 10-12 ¶¶ 102-119.)

## II.     Federal Rule of Civil Procedure 12(b)(6)

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News*

*Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.*

**III. Discussion**

Defendants move to dismiss the Complaint under Rule 12(b)(6), asserting that the individual Defendants are entitled to qualified immunity as to Plaintiff's constitutional claims. (Doc. 18 at 6.) Defendants also argue that Plaintiff has failed to allege a plausible claim for municipal liability against Defendant Town of Sahuarita. (*Id.* at 14.) Finally, Defendants contend that Plaintiff has failed to plead plausible state law claims. (*Id.* at 15.)

**A. Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the circumstances in the particular case).

Whether a right was clearly established must be determined "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The plaintiff has the burden to show that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Thus, "the contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable

official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted). Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not "clearly established" or the officer could have reasonably believed that his particular conduct was lawful. *Romero*, 931 F.2d at 627.

### 1. False Arrest (Fourth Amendment)

To state a § 1983 claim for false arrest, Plaintiff must show that he was arrested without probable cause or other justification. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013). "'Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'" *Id.* at 1097-98 (quoting *Maxwell v. County of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). And, "[b]ecause probable cause must be evaluated from the perspective of 'prudent [people], not legal technicians,' an officer need not have probable cause for every element of the offense. However, when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)).

Initially, Plaintiff was arrested for trespass; he does not specify the particular trespass statute under which he was charged. Under Arizona law, a person commits criminal trespass in the second degree by "knowingly entering or remaining unlawfully in or on any nonresidential structure or in any fenced commercial yard." Ariz. Rev. Stat. § 13-1503. "Enter or remain unlawfully" within the meaning of the trespass statute means:

> an act of a person who enters or remains on premises when the person's intent for so entering or remaining is not licensed, authorized or otherwise privileged except when the entry is to commit theft of merchandise displayed for sale during normal business hours, when the premises are open to the public and when the person does not enter any unauthorized areas of the premises

Ariz. Rev. Stat. § 13-1501(2).

Accepting Plaintiff's factual allegations as true, the Court finds that Defendants had probable cause to arrest Plaintiff for criminal trespass in the second degree. The store manager told the officers that he had asked Plaintiff to leave the store, and Plaintiff had ignored the request. Plaintiff insinuates that the store manager's information was not trustworthy because of the manager's "histrionic" and "evolving" description of Plaintiff's conduct in the store. (Doc. 1 at 4 ¶¶ 34, 37.) However, Plaintiff's allegations are too vague to support a conclusion that the store manager's information was not trustworthy such that a prudent officer could not believe Plaintiff had committed a crime. Plaintiff simply does not provide sufficient factual detail concerning what occurred in the store and the store manager's description of the events. Although Plaintiff did not hear the store manager's request that Plaintiff leave the store, the officers, at the time of his arrest and based on the store manager's information, reasonably could have believed that the store manager had made a reasonable request for Plaintiff to leave the store, and that Plaintiff had remained there. It is irrelevant that Plaintiff ultimately was charged with disorderly conduct, rather than trespass. "[P]robable cause may exist for an arrest 'for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested.'" *Blankenhorn*, 485 F.3d at 473 (quoting *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 950 (9th Cir. 2003).

In sum, "under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe" Plaintiff was trespassing. *Id.* (quoting *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001)). Thus, the allegations in the Complaint do not state a Fourth Amendment claim with respect to Plaintiff's arrest. The Court will therefore grant

Defendants' Motion to Dismiss as to Count I.

### 2. Illegal Search (Fourth Amendment)

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005). "In such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Arvizu*, 534 U.S. at 273 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The reasonable suspicion standard "is not a particularly high threshold." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc). It has been defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 1078 (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). "Although a . . . mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *Arvizu*, 534 U.S. at 274) (alteration in *Valdes-Vega*).

When conducting an investigatory stop, a police officer is entitled to conduct a limited investigation to determine if the person was involved in criminal activity. *United States v. Terry*, 392 U.S. 1, 30 (1968). To that end, the officer may ask questions "reasonably related in scope to the justification for his initiation of contact." *United States v. Crapser*, 472 F.3d 1141, 1153 (9th Cir. 2007) (quoting *United States v. Murillo*, 253 F.3d 1169, 1174 (9th Cir. 2001), *overruled on other grounds as recognized by United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007)). Thus, an investigatory stop is reasonable under the Fourth Amendment if "the officer's action was justified at its inception" and the investigation "was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20.

"While the Fourth Amendment generally prohibits searches without a warrant, the

warrant requirement is subject to some well-established exceptions." *United States v. Smith*, 389 F.3d 944, 950 (9th Cir. 2004) (citing *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999); *Morgan v. United States*, 323 F.3d 776, 781 (9th Cir. 2003)); *see e.g., Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (inventory search); *Chimel v. California*, 395 U.S. 752, 762-63 (1969) (search incident to arrest).

The officers searched Plaintiff's person incident to his arrest, which is an established exception to the warrant requirement. *Chimel*, 395 U.S. at 762-63. Accordingly, the Court finds the search was reasonable within the meaning of the Fourth Amendment, and the Complaint does not state a Fourth Amendment claim with respect to the search of Plaintiff's person. The Court will therefore grant Defendants' Motion to Dismiss as to Count II.

### 3. Malicious Prosecution

To prevail on a claim for malicious prosecution under § 1983, Plaintiff must show that Defendants "prosecuted him with malice and without probable cause," and that Defendants "did so for the purpose of denying him equal protection or another specific constitutional right." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). The elements of malicious prosecution are determined by state law. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). In Arizona, "[t]he essential elements of malicious prosecution are (1) a criminal prosecution, (2) that terminates in favor of plaintiff, (3) with defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975).

The existence of probable cause is an absolute defense to malicious prosecution, *Lassiter*, 556 F.3d at 1054, and the mere fact that "a prosecution was unsuccessful does not mean it was not supported by probable cause," *Freeman*, 68 F.3d at 1189. "[I]t is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes *prima facie*—but not *conclusive*—evidence of probable cause." *Awabdy*, 368 F.3d at 1067.

In analyzing whether there was probable cause to initiate a criminal proceeding under a state law claim for malicious prosecution, the Court considers whether there was "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused [was] guilty of the offense." *Gonzales v. City of Phoenix*, 52 P.3d 184, 187 (Ariz. 2002). "Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court." *Slade,* 541 P.2d at 553. "The test generally applied is: upon the appearances presented to the [prosecutor], would a reasonably prudent man have instituted or continued the proceeding?" *Gonzales*, 52 P.3d at 187.

While "the exercise of prosecutorial judgment will usually insulate investigating officers from liability," *Poppell v. City of San Diego*, 149 F.3d 951, 962 (9th Cir. 1998), there is an exception to this rule for instances in which officers knowingly submit false information, *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981). Under that exception, an officer who "maliciously or recklessly makes false reports to the prosecutor may be held liable for damages incurred as a proximate result of those reports," or where the prosecutor was "pressured or caused by the investigating officers to act contrary to his independent judgment." *Blankenhorn*, 485 F.3d at 482. Thus, there is a rebuttable presumption that a prosecutor exercises independent judgment regarding the existence of probable cause, but the presumption can be overcome by evidence that the officers knowingly submitted false information. *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986). If the presumption is not overcome, the arresting officers are "insulate[d]" from "liability for harm suffered after the prosecutor initiated formal prosecution." *Id.*

The Ninth Circuit has also held that "a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent [prosecutorial] judgment" because "[a] suspect's account of an incident, by itself, is unlikely to influence a prosecutor's decision." *Newman v. County of Orange*, 457 F.3d 991, 994-95 (9th Cir. 2006). The Ninth Circuit has concluded that even when an officer purposely omitted certain information in his police report, the omissions, even if they influenced the State's

decision to drop the charges later, were not themselves the basis upon which the charges were made and therefore did not "overcome the presumption of prosecutorial independence." *Blankenhorn*, 485 F.3d at 483. Plaintiff must point to more evidence of fabrication than "the fact that the officers' reports were inconsistent with [his] own account of the incidents leading to his arrest." *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994).

As noted above, there is a rebuttable presumption that a prosecutor exercises independent judgment regarding the existence of probable cause, but the presumption can be overcome by evidence that the officers knowingly submitted false information. *Smiddy*, 665 F.2d at 266. Plaintiff has not alleged that Defendants "maliciously or recklessly ma[de] false reports to the prosecutor" or that the prosecutor was "pressured or caused by the investigating officers to act contrary to his independent judgment." *Blankenhorn*, 485 F.3d at 482. Thus, because Plaintiff has not overcome the presumption of prosecutorial judgment, Defendants are "insulate[d]" from "liability for harm suffered after the prosecutor initiated formal prosecution." *Smiddy*, 803 F.2d at 1471. The Complaint does not state a claim for malicious prosecution. The Court will grant Defendants' Motion to Dismiss with respect to Counts III and IV.

### 4. Failure to Conduct a Reasonably Thorough Investigation (Fifth and Fourteenth Amendments)

Law enforcement officers do not have an affirmative duty to a plaintiff to investigate a crime in a particular way, *Gini v. Las Vegas Metropolitan Police Dept.*, 40 F.3d 1041, 1045 (9th Cir. 1994), and their failure to investigate a crime does not rise to the level of a violation of any constitutional right, *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996). Inadequate investigation is insufficient to state a civil rights claim unless another constitutionally recognized right was involved. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curium).

As discussed above, Plaintiff does not state a claim for any constitutional violation in the Complaint. Accordingly, Plaintiff necessarily fails to state a constitutional claim

based on the adequacy of Defendants' investigation. Count V does not state a claim upon which relief can be granted, and the Court will therefore grant Defendants' Motion to Dismiss as to Count V.

### B. Sufficiency of Plaintiff's Allegations

[A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

#### 1. *Monell* Claims Against Defendant Town of Sahuarita

Municipalities and other local governing bodies are included among those "persons" who may be sued under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). The actions of individuals may support municipal liability only if the employees were acting pursuant to an official policy or custom of the municipality. *Botello v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005). A § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the

municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

In each of his constitutional claims, Plaintiff makes the following conclusory allegation: "To the extent that any policy or practice of the Town of Sahuarita was the moving force behind the violation, the Town is also liable under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978)." This allegation is wholly insufficient to state a claim against Defendant Town of Sahuarita. Plaintiff does not even identify a particular policy or custom that Defendant Town of Sahuarita maintained that was pertinent to his alleged injury, let alone explain how such a policy or custom caused his injury. The Court will therefore dismiss Plaintiff's *Monell* claims against Defendant Town of Sahuarita in Counts I through V.

### 2. Failure to Train/Supervise

To state a claim based on a failure to train or supervise, a plaintiff must allege facts to support that the alleged failure amounted to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). A plaintiff must allege facts to support that not only was particular training or supervision inadequate, but also that such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the defendant. *Id.* at 1213-14; *see Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir. 2002) (a plaintiff must allege facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to have been deliberately indifferent to the need." (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989))).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The inadequacy of police training may only serve as a basis for § 1983 liability where the failure

to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton*, 489 U.S. at 388. Where, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

Plaintiff alleges only that Defendant Town of Sahuarita "apparently held an active shooter training shortly before this incident that may have been the driving force behind" the alleged constitutional violations. This bare allegation is insufficient to state a failure to train claim. Plaintiff does not specify how the training Defendants received was inadequate, nor does he allege that the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Accordingly, Plaintiff has failed to state a claim in Count VI. The Court will grant Defendants' Motion to Dismiss with respect to Count VI.

### 3. State Law False Arrest and Malicious Prosecution

For the reasons discussed above with respect to Plaintiff's constitutional claims of false arrest and malicious prosecution, Plaintiff has failed to state a claim for state law false arrest and malicious prosecution. The Court will therefore grant Defendants' Motion to Dismiss as to Counts VII and VIII.

### 4. Defamation

Under Arizona law, a plaintiff asserting a claim for defamation must show (1) that the defendant made a false statement; (2) that the statement was published or communicated to someone other than the plaintiff; and (3) that the statement tends to harm plaintiff's reputation. *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989); *see also Turner v. Devlin*, 848 P.2d 286, 288-89 (Ariz. 1993) ("To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation."). The publication must be a statement of actual fact susceptible to proof of truth or falsity.

*Turner*, 848 P.2d at 294. "Substantial truth is an absolute defense to a defamation action in Arizona. Slight inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified." *Read v. Phx. Newspapers, Inc.*, 819 P.2d 939, 941 (Ariz. 1991) (citations omitted).

Arizona law recognizes that some otherwise defamatory statements may be protected under a qualified or conditional privilege. *Green Acres Trust v. London*, 688 P.2d 617, 624 (Ariz. 1984) (en banc) (recognition of qualified privilege "is based on the social utility of protecting statements required to be made in response to a legal, moral or social duty"). Arizona courts apply a two-part analysis for determining whether a qualified privilege exists. *Id.* at 624. First, the court must examine the circumstances in which the statement was made and determine as a matter of law whether a privileged occasion arose. *Id.* Then, if the court determines that such an occasion arose, the plaintiff has the burden of showing that the privilege was abused, either by proving actual malice or by demonstrating excessive publication. *Id.* Although the second part of the test is usually a question of fact for the jury, the Court may decide the issue if there is no evidence of malice or excessive publication. *Melton v. Slonsky*, 504 P.2d 1288, 1291 (Ariz. Ct. App. 1973) ("Unless only one conclusion can be drawn from the evidence, the determination of the question whether the privilege has been abused is for the jury") (quoting W.L. Prosser, Law of Torts, § 115, at 794 (4th ed. 1971)).

The threshold question in a defamation action is whether a reasonable fact finder could conclude that a statement implies an assertion of objective fact. *Yetman v. English*, 811 P.2d 323, 331 (Ariz. 1991). In determining whether a reasonable fact finder could conclude that a communication implies an assertion of objective fact, the Court considers: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement in question is susceptible of being proved true or false. *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009); *Unelko Corp. v. Rooner*, 912 F.2d 1049, 1053 (9th Cir. 1990), *cert. denied*, 499

U.S. 961 (1991).

Defendant Almodova provided information regarding Plaintiff's arrest to the news station and newspaper and likened Plaintiff to a "copycat mass shooter." (Doc. 1 at 6 ¶ 58.) This information was printed in a news article regarding Plaintiff's arrest. However, Plaintiff provides no other details about the article. Plaintiff does not state the *specific* information printed in the article with respect to his arrest, nor does he specify the context in which Defendant Almodova compared Plaintiff to a "copycat mass shooter." These bare allegations are insufficient for the Court to determine whether a reasonable fact finder could conclude that the article implied an assertion of objective fact. Accordingly, Plaintiff has failed to state a claim for defamation. The Court will grant Defendants' Motion to Dismiss with respect to Count IX.

### 5.   **Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress, a plaintiff must plead sufficient facts showing that: (1) the conduct by the defendant is "extreme" and "outrageous"; (2) the defendant "either intend[ed] to cause emotional distress or recklessly disregard[ed] the near certainty that such distress would result from his conduct"; and (3) "severe emotional distress . . . occur[ red] as a result of defendant's conduct." *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)). "The trial court must determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief." *Mintz v. Bell Atlantic Sys. Leasing Intern., Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995). A plaintiff must plead facts that "show that the defendant's conduct 'was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Johnson v. McDonald*, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999) (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)). "Only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury." *Mintz*, 905 P.2d at 563.

Plaintiff alleges that Defendants' conduct—arresting and prosecuting Plaintiff without probable cause, publishing details of his arrest along with his photograph in local news and likening Plaintiff to a mass shooter, and searching Plaintiff's person in the front of the Walmart down the road from his job in the town where he grew up—was extreme and outrageous. (Doc. 1 at 11 ¶ 113.) Plaintiff alleges no facts to support a conclusion that Defendants intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff has failed to state a claim for intentional infliction of emotional distress. The Court will therefore grant Defendants' Motion to Dismiss with respect to Count X.

### 6. Vicarious Liability

Because the Court finds Plaintiff has not adequately stated a claim for relief, Plaintiff's claims for vicarious liability against Defendant Town of Sahuarita necessarily fail. The Court will therefore grant Defendants' Motion to Dismiss as to Count XI.

### IV. Dismissal without Prejudice

The parties did not address whether dismissal, if granted, should be with or without prejudice. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the Court may grant leave to amend "freely" "when justice so requires." A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). "Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)). However, where amendment would be futile, there is no reason to prolong litigation by allowing further amendments. *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1039 (9th Cir. 2002); *Klamath-Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293

1  (9th Cir. 1983) (futile amendments should not be permitted).

2  In this case, it appears permitting Plaintiff to amend the Complaint would not be futile because the deficiencies in the Complaint could be cured with additional allegations. Accordingly, the Court will dismiss the Complaint without prejudice and with leave to amend.

**IT IS ORDERED:**

(1) Defendants' Motion to Dismiss (Doc. 18) is **granted**. The Complaint (Doc. 1) is **dismissed without prejudice**.

(2) Plaintiff may file an amended complaint within the time provided by the Federal Rules of Civil Procedure.

Dated this 17th day of December, 2020.

_____
Honorable John C. Hinderaker
United States District Judge