**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Freedom Christopher Austin Pfaendler,<br><br>    Plaintiff,<br><br>v.<br><br>Town of Sahuarita, et al.,<br><br>    Defendants. | No. CV-20-00188-TUC-JCH<br><br>**ORDER** |

    Before the Court is Defendants' Motion for Summary Judgment (Doc. 58). Defendants (certain individual "Officers," together with their employer the "Town") seek summary judgment on claims arising from Plaintiff's arrest on August 16, 2019, at a Sahuarita Walmart. The Walmart's manager and employees called police because Plaintiff kept his motorcycle helmet on with the visor down in the store and appeared to ignore the manager's several requests for Plaintiff to leave. The Walmart employees were alarmed by Plaintiff's demeanor because an active shooter had killed at least 20 people in a Texas Walmart three days earlier. The Officers arrested Plaintiff for trespassing, searched him, and cited him for disorderly conduct. One Officer submitted the citation for prosecution, which the prosecutor subsequently dropped. The Court will grant Defendants' Motion because probable cause supported Plaintiff's arrest, the Officers validly searched Plaintiff's person incident to his arrest, and the Officers are entitled to qualified immunity in all respects, including on the search of Plaintiff's backpack.

    Plaintiff's original complaint alleged 11 counts against the Officers and vicariously

against the Town. Doc. 1. The Court dismissed without prejudice for failure to state a claim. Doc. 26. Plaintiff moved to amend his complaint, adding a few factual allegations tending to weaken probable cause: that 9-1-1 dispatchers provided the Officers with an innocent explanation for Plaintiff's appearance, (Doc. 27 ¶¶ 26–28), and that the Walmart manager's story to the Officers was unreliable. Doc. 27 ¶ 41. The Court granted in part, permitting six claims to move forward. Doc. 29. The Court subsequently dismissed one Defendant, (Doc. 35), and granted partial summary judgment for the Officers on the three remaining state law claims. Doc. 44. The Court found partial summary judgment warranted for the Officers because Plaintiff failed to personally serve the Officers and failed to respond to their partial summary judgment motion. Doc. 44 at 2. But the Court denied partial summary judgment for the Town, citing ambiguous Arizona law that could permit vicarious liability for an employer even when its agents receive summary judgment. Doc. 44 at 5. Defendants' motion for summary judgment and statement of facts followed. Docs. 58 ("MSJ"), 59 ("DSOF"). Plaintiff responded, (Docs. 66 ("Response"), 67 ("PSOF")), and Defendants replied. Doc. 69. The Court heard oral argument on February 8, 2022. Doc. 71 ("Hr'g Trns.").

I.  **Legal Standard**

Summary judgment is appropriate when the parties have no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986). A fact is material if it might affect the outcome of the suit. *Id.*

The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material. *Liberty Lobby*, 477 U.S. at 248, 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The

nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1). The court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Liberty Lobby*, 477 U.S. at 255.

## II. Material Facts

Plaintiff's case depends on whether the Officers had probable cause to arrest him for trespassing or disorderly conduct, and whether they searched him lawfully. As explained in more detail below, probable cause considers the totality of the circumstances known to officers at the time and does not require officers to believe every innocent explanation; trespassing is knowingly remaining on a property after a reasonable request to leave; and disorderly conduct includes knowingly making a protracted display to prevent the transaction of business. The following facts relevant to probable cause and the search are undisputed or drawn from Plaintiff's account.

### A. The encounter and arrest

On August 6, 2019, Defendant Officers responded to several 911 calls reporting a suspicious person at a Sahuarita Walmart. DSOF ¶¶ 1–4; PSOF ¶¶ 1–4. The Officers knew that three days earlier, an active shooter had killed or injured 46 people at a Walmart in El Paso, Texas. *See* DSOF ¶¶ 2, 14; PSOF ¶¶ 2, 14.[1] Upon arrival, the Walmart manager told the Officers that Plaintiff alarmed the manager and his staff by walking around the store wearing armored motorcycle clothes, a motorcycle helmet with a closed visor, and a camouflage backpack. DSOF ¶ 9; Response at 3:15; PSOF ¶ 9. August temperatures in Sahuarita are hot, averaging between 98 and 103 degrees. (DSOF

---

[1] *See also, e.g.*, Dakin Andone, et al., *20 people killed in El Paso shooting, Texas governor says*, CNN (8:58 AM EDT, August 4, 2019), https://www.cnn.com/2019/08/03/us/el-paso-shooting/index.html. The Court takes judicial notice of this article because its details are readily determined, *see* Fed. R. Evid. 201, and because both parties refer to "the El Paso shooting" repeatedly.

¶ 10; PSOF ¶ 10. The manager told the Officers he asked Plaintiff to remove his helmet but was ignored, followed Plaintiff around the store trying to get his attention, and demanded Plaintiff leave the store five or six times. DSOF ¶¶ 11–13; PSOF ¶¶ 11–13.

The Officers approached Plaintiff as he was placing purchased items in his backpack. DSOF ¶ 6; PSOF ¶ 6. Plaintiff did not react when Officer George said, "Hey buddy, you got some ID?" DSOF ¶¶ 6–7; PSOF ¶¶ 6–7. Officer George stepped closer to Plaintiff and addressed him again in a raised voice. DSOF ¶ 7; PSOF ¶¶ 7, 10(2). This time Plaintiff responded, removed his helmet, and began to answer the Officers' questions. DSOF ¶ 7; PSOF ¶ 7. Plaintiff explained that he did not hear the manager or the Officer's initial question because he was listening to music through his helmet's Bluetooth connection. *See* PSOF ¶¶ 4(2), 8(2). Plaintiff also explained he did not know the manager was trying to get his attention, and that he saw the manager but believed the manager was talking through a headset to someone else. PSOF ¶¶ 7(2), 8(2).

The interaction grew more tense. After some back-and-forth between Plaintiff, the manager, and the Officers, Officer George told Plaintiff, "You're an argumentative person, and I am not the person you want to argue with." Response at 3. Officer George told him to "stop talking," (*id.*), and to "listen to learn, not … to reply." Doc. 59-9 at 9 (referenced by Response at 3). "[A]fter Officers George and Rivera lectured [him about scaring people in the wake of El Paso,]" Plaintiff stopped responding verbally. DSOF ¶ 8; PSOF ¶¶ 8, 12(2). When the Officers asked subsequent questions, Plaintiff gestured that he would remain silent. DSOF ¶ 8; PSOF ¶¶ 8, 12(2). Officer Rivera told Plaintiff, "You're acting like a little child." PSOF ¶ 13(2). Officer Rivera told another officer he was contemplating arrest, "especially the way that [Plaintiff is] acting." PSOF ¶ 16. Shortly after, the Officers did arrest Plaintiff, despite initially deciding only to trespass him (prohibiting Plaintiff from returning to any Walmart or affiliate). PSOF ¶ 15. The Officers informed Plaintiff he was under arrest for trespassing, but Officer Rivera also concluded that Plaintiff should be arrested and cited for disorderly conduct. PSOF ¶ 15.

///

### B. The search and prosecution

Officers George and Villanueva handcuffed Plaintiff and led him outside; Officer Rivera collected Plaintiff's backpack and helmet, which were next to Plaintiff when he was arrested, and followed. Doc. 59-12 at 9:00–10:00; *see also* DSOF ¶ 15; *cf.* PSOF ¶ 15.[2] Once outside at their patrol vehicle, two Officers searched Plaintiff's person. DSOF ¶¶ 17, 18; PSOF ¶¶ 17, 18; Doc. 59-12 at 10:00–21:30. Toward the end of the search, Officer Rivera asked Plaintiff, "Is there anything on you I may have missed?" Doc. 59-12 at 20:40. Plaintiff replied, "I do have basketball shorts [on under my motorcycle pants], but the pockets are empty." Doc. 59-12 at 20:44. Officer Rivera asked Plaintiff to confirm the pockets were empty, and Plaintiff replied, "I've got no reason to lie." Doc. 59-12 at 20:55. Another officer advised Plaintiff that he would be searched at the jail, and that if Plaintiff had "any drugs, any contraband, weapons whatsoever" they would be found and ought to be disclosed. Doc. 59-12 at 20:56–21:16. The officer concluded, "So if you have anything on you like that you need to tell us now[.]" Doc. 59-12 at 21:16–21:19. Plaintiff replied, "I don't. Not on me at least. I don't know about my backpack." Doc. 59-12 at 21:24–21:29. Officer Rivera then closed Plaintiff in the back of the patrol vehicle and searched Plaintiff's backpack, which the bodycam video shows was on the hood of the patrol vehicle. Doc. 59-12 at 21:34–32:10; *cf.* DSOF ¶ 18 ("Plaintiff's backpack, which was originally in [Plaintiff's] possession and remained near [Plaintiff's] area of detention, was also searched."); PSOF ¶ 18 ("Admit.").

Officer Rivera signed a citation for disorderly conduct, not trespassing, and submitted it for prosecution.[3] The charges ultimately "were dismissed." PSOF ¶ 16(2).

---

[2] The Court draws in part on bodycam footage because the parties' statements of fact obscure or omit critical details. The parties stipulated to the bodycam's accuracy at oral argument. Hr'g Trns. at 16:1.

[3] The parties' statements of fact again obscure or omit critical details. *Compare* MSJ at 15 (stating without citation that "Officer Rivera signed the citation for disorderly conduct"), *with* Response at 3–4 (Plaintiff "was … booked into jail[] and prosecuted until charges against him were dismissed."); *cf.* Complaint ¶ 114 ("Defendants caused Plaintiff to be criminally prosecuted[.]" The parties clarified and stipulated the stated facts concerning Plaintiff's initial prosecution at oral argument. Hr'g Trns. at 15:14.

### III. Analysis

Defendants assert qualified immunity from Plaintiff's federal claims (Counts One, Two, and Three), and that probable cause defeats Plaintiff's state claims (Counts Seven and Eight). MSJ at 6, 17. Police officers are entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido, Cal. V. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam) (citations omitted). This analysis consists either in: (1) determining whether the facts a plaintiff has shown make out a constitutional violation, or (2) determining whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232, 242 (2009). Lower courts are advised to "think hard, then think hard again" before analyzing both. *D.C. v. Wesby*, 138 S. Ct. 577, 589 n. 7 (2018) (citation omitted).

In this case, the first qualified-immunity option requires a probable-cause analysis that also resolves Plaintiff's state-law claims. The Court therefore first determines that probable cause supported Plaintiff's arrest, citation, prosecution, and the search of Plaintiff's person. That defeats all Plaintiff's claims except for illegal search of his backpack. The Court then determines that Plaintiff waived any objection to the backpack search by failing to identify it as a genuine issue for trial in his Response. Even if he had not waived any objection, the Court finds that Plaintiff's right to be free of the backpack search was not "clearly established" at the time, so the Officers are entitled to qualified immunity on that count.

#### A. Probable cause defeats all but one part of Plaintiff's claims.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Arrest is a seizure, and warrantless arrest is reasonable if the officer has probable cause to believe the suspect committed a crime in the officer's presence. *Wesby*, 138 S. Ct. at 585 (citations omitted). The Court discusses the law related to searches in the search analysis below.

Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338

(2014). It requires only a "reasonable ground for belief of guilt" under the totality of the circumstances known to an officer before the arrest. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citations omitted). A "suspect's innocent explanation" is part of that totality, but an officer need not rule it out. *Wesby*, 138 S. Ct. at 588. The probable-cause test is objective; a particular officer's subjective beliefs or motivations are generally irrelevant. *See Whren v. United States*, 517 U.S. 806 (1996); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (identifying two exceptions that do not apply in this case). Instead, an objectively "reasonable ground for guilt" exists given a "fair probability," *Florida v. Harris*, 568 U.S. 237, 244 (2013) (citation omitted), "or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 138 S. Ct. at 586 (citations omitted). Put differently, an officer does not violate the Constitution by mistakenly but reasonably concluding probable cause exists. *See id.*

### a. Probable cause supported Plaintiff's arrest and prosecution.

Plaintiff's claims for false arrest and malicious prosecution are defeated by probable cause supporting the Officers' actions. An officer could reasonably conclude probable cause existed to arrest Plaintiff for trespassing and disorderly conduct. Trespassing includes "knowingly … remaining unlawfully on any real property after a reasonable request by … any other person having lawful control over [the] property." A.R.S. § 13-1502(A)(1) (class 3 misdemeanor); *see also* A.R.S. § 13-1503(A)(1) (class 2 misdemeanor). The Officers were dispatched when the Walmart manager and several employees called 911 to report a suspicious person. The Officers knew that a Texas Walmart had been the site of a mass shooting three days prior. When the Officers arrived, the manager told them he had asked Plaintiff to leave 5–6 times. The manager also told them Plaintiff had ignored the manager's request to remove his helmet, and that the manager had followed Plaintiff around the store. The Officers could see Plaintiff was wearing full motorcycle gear including a helmet with a closed visor and using a camouflage backpack.

An officer encountering Plaintiff under those circumstances could reasonably

conclude there was a fair probability Plaintiff knew he was remaining in Walmart unlawfully. Several aspects of the encounter would support this conclusion. An officer could believe that Walmart managers and employees do not typically report customers as suspicious persons to 911 unless that customer's appearance is highly unusual. An officer could also believe Plaintiff was dressed unusually compared with community standards, other customers, and given the summer heat. On that basis, an officer could infer that Plaintiff's unusual appearance was obvious. That inference, together with the manager's statements and the recent Walmart mass shooting, could support the belief that Plaintiff knew his appearance was generally disconcerting but chose to ignore the manager's requests to leave.

A reasonable officer could also choose not to believe Plaintiff's innocent explanations. Plaintiff claimed he could not hear anything because he was listening to music. Plaintiff also claimed he did not know the manager was trying to get his attention because Plaintiff thought the manager was speaking to someone else through a headset. Together with the details above, an officer could find it implausible that Plaintiff's music rendered him so unaware of his surroundings he did not notice the manager following him around asking him to leave. An officer could similarly find it implausible that Plaintiff's music prevented him from noticing three police officers approaching and surrounding him until one of them stepped in close and spoke in a raised voice. And an officer could find it implausible that Plaintiff mistook the manager asking Plaintiff to leave 5–6 times for the manager talking to someone else.

Although a somewhat closer question, an officer could also reasonably conclude there was probable cause to suspect disorderly conduct. Disorderly conduct includes making "any protracted … display with the intent to prevent the transaction of the business of a lawful … gathering [with intent to disturb the peace … or with knowledge of doing so.]" A.R.S. § 13-29904(A)(4). Based on the recent Walmart shooting and observations of Plaintiff's dress, manner, and potentially implausible explanations, together with the manager's account, an officer could conclude that Plaintiff intended his

appearance to be disconcerting and thereby disrupt Walmart's business. Alternately, an officer could conclude Plaintiff knew his appearance was disconcerting but chose to proceed anyway despite the apparent effect of disrupting Walmart's business. Either way, an officer could conclude—reasonably even if mistakenly—probable cause existed to suspect Plaintiff of disorderly conduct.

Plaintiff raises several unpersuasive objections. Plaintiff objects that the Officers could have reviewed Walmart's security footage on the spot to determine the truth. But a reasonable officer is under no obligation to conduct that kind of investigation before making an arrest. Plaintiff also objects that the manager's story to the police was inconsistent, alerting them to its untrustworthiness. But the only fact Plaintiff identifies that was known to the Officers at the time is that the manager initially hesitated when asked whether he asked Plaintiff to leave the store. (Response at 2 n.1.) That is not enough to support Plaintiff's theory. Plaintiff also objects that the Officers arrested him because they were frustrated with him, not because they had probable cause for trespassing or disorderly conduct. But the Officers' motivation is irrelevant because a reasonable officer under the same circumstances could conclude probable cause existed.

For these reasons, the Court finds that the undisputed facts show the Officers had probable cause to arrest Plaintiff for trespassing and disorderly conduct. The Court will grant summary judgment for Defendants on Count One (Federal False Arrest against Defendant Officers and vicariously against Defendant Town) and Count Seven (State False Arrest vicariously against Defendant Town). For the same reasons, the Court will also grant summary judgment for Defendants on Count Three (Federal Malicious Prosecution against Defendant Officers and vicariously against Defendant Town) and Count Eight (State Malicious Prosecution vicariously against Defendant Town). Probable cause defeats both federal and state malicious prosecution claims. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004); *Bird v. Rothman*, 128 Ariz. 599, 602 (Ct. App. 1981) (citations omitted). The undisputed facts support the Officers' probable-cause

determination, so they also defeat Plaintiff's malicious prosecution claim.[4]

### B. Plaintiff's valid arrest justified the search that followed, at least for purposes of qualified immunity.

Plaintiff's remaining claim is the federal illegal search claim (Count Two). Warrantless searches are generally unconstitutional unless they fit into one of several exceptions. *Riley v. California*, 573 U.S. 373, 382 (2014) (citation omitted). Defendants seek summary judgment primarily under the search incident to arrest ("SITA") exception, which permits officers to search (1) an arrestee's person and (2) the area "within [the arrestee's] immediate control" at the time of the arrest. (Doc. 58 at 13 (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)); *see also United States v. Robinson*, 414 U.S. 218, 236 (1973) (distinguishing the two areas and extending *Chimel* to a pack of cigarettes on arrestee's person). Searches of an arrestee's person are justified by the diminished privacy expectation an arrestee has in their person. *See Riley*, 573 U.S. at 392 (citation omitted). These searches may be conducted contemporaneously or after the arrestee is transported elsewhere. *See United States v. Edwards*, 415 U.S. 800, 803 (1974).

By contrast, searches of the area within an arrestee's "immediate control" are justified by dual "interests in officer safety and evidence preservation[.]" *See Arizona v. Gant*, 556 U.S. 332, 338 (2009) (interpreting *Chimel* in a vehicle-search context) (citations omitted); *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010). These searches must be "roughly contemporaneous" with the arrest. *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004). The question is "not strictly on the timing of the search but its relationship to (and reasonableness in light of) the circumstances of the arrest." *United States v. Caseres*, 533 F.3d 1064, 1073 (9th Cir. 2008) (quoting *Smith*, 389 F.3d at 951). Ninth Circuit courts conduct "a twofold inquiry: (1) was the searched item within the arrestee's immediate control when he was arrested; [and] (2) did events occurring after the arrest but before the search ma[k]e the search unreasonable?" *Maddox*, 614 F.3d at

---

[4] Even if Plaintiff's arrest and prosecution were not supported by probable cause, Defendants would be entitled to qualified immunity on Counts One, Three, Seven, and Eight. Plaintiff fails to identify caselaw where officers in similar circumstances did not have probable cause. The Court also cannot find any.

1048 (quoting *United States v. Turner*, 926 F.2d 883, 887 (9th Cir. 1991)). On the second question, temporal and spatial proximity does not guarantee reasonableness; instead, some "threat or exigency must be present[.]" *Id.* In the context of a bag, one such threat could be the reasonable possibility that the arrestee may reach the bag to destroy evidence or obtain a weapon. *See generally United States v. Cook*, 808 F.3d 1195, 1200 (9th Cir. 2015). Another such threat is the legitimate belief that a dangerous instrumentality like a weapon is inside. *See Maddox*, 614 F.3d at 1048–1049.

### a. The Officers validly searched Plaintiff's person.

The SITA principles above easily apply to the Officers' search of Plaintiff's person. The Officers began to search Plaintiff's pockets, shoes, and socks within a couple minutes of his arrest. Those areas were within his "immediate control" when he was arrested, and two minutes is "roughly contemporaneous" with the arrest. No intervening events made the search unreasonable because the Officers merely walked Plaintiff outside. The Officers' search of Plaintiff's person therefore fits comfortably within the SITA exception and cannot support Plaintiff's illegal search claim.

Plaintiff responds with a single objection: "[I]f [Plaintiff]'s arrest was unlawful [due to a lack of probable cause], the search incident to the arrest was also unlawful." Response at 7. The Court understands this as a concession that if Plaintiff's arrest was lawful, Plaintiff's search was also lawful. But the Court also finds Plaintiff's objection unpersuasive for the reasons above. The Court therefore will also grant in part Defendants' MSJ on Count Two with respect to Defendants' search of Plaintiff's person.

### b. Although the backpack search was less clearly valid, Plaintiff waived any objection to it.

As discussed below, Officer Rivera's search of Plaintiff's backpack raises a much closer question than the search of Plaintiff's person. But Plaintiff waived any challenge to it by not disputing Defendant's factual assertion that the backpack remained in the "area of detention" and by failing to meaningfully object in his Response. The Court will not manufacture a party's arguments for them. *See, e.g.*, *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). An argument not properly argued or

explained is waived. *See, e.g.*, *E.E.O.C. v. Eagle Produce, L.L.C.*, 2008 WL 2796407, at *2 (D. Ariz. July 18, 2008) ("Parties must come forward with their points and authorities in support of or in opposition to a motion."); *see also* LRCiv 7.2(i), (b).

Plaintiff's Response and statement of facts agreed that the backpack was within his "area of detention" when Officer Rivera searched it, and argued only that any search was illegal because the arrest was illegal. An item within an arrestee's "area of detention" may often be permissibly searched incident to lawful arrest, and Plaintiff's arrest was lawful. Plaintiff thus fails to carry the shifted burden to demonstrate a disputed issue of fact for trial. Because Plaintiff did not dispute Defendant's statement of fact on this point or present any argument regarding the backpack search before oral argument, the record is incomplete. As a result, Defendants likely were prejudiced because they did not have an opportunity to create a complete factual record or fully brief the legal issues related to the backpack search, including qualified immunity. That prejudice is not cured simply because the Court provided additional guidance to the parties before oral argument. The Court's guidance gave Defendants notice about the Court's narrow focus on the relevance of Plaintiff's statements and whether the Court could properly consider them. Plaintiff's focus, by contrast, was given in his Response.

After oral argument, Plaintiff sought to insert facts and arguments he failed to timely raise. His "Notice to the Court" alleges that Plaintiff's backpack never went to the Pima County Jail for an inventory search. Doc. 72 at 1. Plaintiff further reminds the Court of its powers under Federal Rule of Civil Procedure 56(e). *Id.* Plaintiff's "Notice" is in fact an untimely motion to amend his Response and for the Court to order supplemental briefing. Plaintiff acknowledges "[t]his issue was not argued or briefed by the parties[,]" then continues to overlook his burden to overcome Defendants' qualified immunity defense with clearly established law. *See id.* Plaintiff's motion, like Plaintiff's Response, is deficient. The time to pursue discovery, file a response, and flesh out or clarify arguments has passed. Plaintiff has waived any challenge to the backpack search beyond the argument he made that probable cause did not support the arrest. Plaintiff therefore

fails to carry his burden of demonstrating a genuine issue for trial.

### c.  The backpack search may have been constitutionally valid.

Even if Plaintiff did not waive any challenge to the backpack search, SITA principles might produce the same result. When the Officers arrested Plaintiff, his backpack was within his "immediate control" on a bench next to him. But three things happened between the arrest and the backpack search that deserve more analysis: (1) Officers' searched Plaintiff's person for about twelve minutes, (2) Officers handcuffed Plaintiff and closed him in the back of a police vehicle, and (3) Plaintiff made a statement that arguably implied the backpack could contain drugs, weapons, or contraband. The question is whether those intervening events made the backpack search unreasonable.

Although searching Plaintiff's person did not render the backpack search unreasonable, closing Plaintiff, handcuffed, into a police vehicle may have. The Officers' search of Plaintiff's person did not make the backpack search unreasonable because Officer safety and evidence preservation interests in the backpack are not diminished by a twelve-minute personal search. Had the backpack remained next to Plaintiff during the personal search, for example, SITA principles likely would permit the Officers to search the bag after searching Plaintiff's person. By contrast, Officer Rivera's decision to close Plaintiff in the squad car before searching the backpack is a much closer question—and one Plaintiff did not identify in his Response. The law permits a rather broad view of what suspects can reach after being handcuffed. Many cases support an officer's search of a bag when the bag is near the suspect while they are handcuffed. *See, e.g.*, *Cook*, 808 F.3d at 1199–1200. But once a suspect is handcuffed and closed in a police vehicle, officer safety and evidence preservation concerns ordinarily evaporate. In other circumstances, that could be enough to decide the issue and find the backpack search unreasonable.

But a critical fact—overlooked by the parties' briefing—muddies the analysis. Just before Officer Rivera closed the door, Plaintiff arguably implied that his backpack could contain drugs, weapons, or contraband. An Officer advised Plaintiff to disclose if he had

"any drugs, any contraband, weapons whatsoever," and Plaintiff replied, "I don't. Not on me at least. I don't know about my backpack." An officer could reasonably conclude from that statement that Plaintiff's backpack might contain weapons. That in turn could revive an interest in officer safety—though not an interest in evidence preservation—as officers could be threatened by transporting a backpack containing a loaded firearm or an explosive even if Plaintiff could not reach it.

The parties' briefing is unhelpful. Defendants carry their initial burden to justify summary judgment by describing the backpack as remaining in Plaintiff's "area of detention." But Plaintiff then admits that description, fails to dispute or discuss Defendants' characterization of *Chimel*, and fails to recognize that Officer Rivera's bodycam footage of the backpack search blatantly contradicts his affidavit. PSOF ¶ 18; Response at 3–4; *compare* Doc. 59-1 ¶ 21, *with* Doc. 59-12 at 23:30–31:15. Defendants also invoke the inevitable-discovery doctrine, claiming that a "post-arrest search" was reasonable because the backpack would be subject to a booking inventory search at the police station. MSJ at 13. Plaintiff fails to object, overlooking that the inevitable-discovery doctrine applies only to the exclusionary rule and does not cure an underlying constitutional violation. *See, e.g.*, MSJ at 13 (citing *U.S. v. Pearson*, 902 F.3d 1016, 1019 (9th Cir. 2018) (affirming that backpack search exceeded SITA scope). Defendants fail to cite any authority for blending the SITA exception and inventory searches into a general "post-arrest search" authority.[5] Defendants also fail to contend with SITA's complexities, (*see generally* MSJ), or the fact that nominal damages are mandatory given even harmless constitutional violations. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978);

---

[5] At oral argument, Defendants reiterated this argument. *See* Hr'g Trns. at 9:19–10:12 (emphasizing *Illinois v. Lafayette*, 462 U.S. 640 (1983), cited in MSJ at 13). But the inventory search in *Lafayette* was conducted at the police station. 462 U.S. at 641, 645 (distinguishing the justification for stationhouse searches from searches incident to arrest). Inventory searches accompanying vehicle impoundment may be permissible incident to arrest if they follow a standard procedure and are not for purposes of investigation. *See, e.g.*, *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). But that reasoning does not clearly extend to personal effects.

*Schneider v. Cnty. of San Diego*, 285 F.3d 784, 794 (9th Cir. 2002). Plaintiff in turn fails to address any of these issues. *See generally* Response.

### d. Qualified immunity ultimately defeats any search liability.

Even setting the constitutional analysis to the side, Plaintiff's claims related to the backpack search fail because the Officers are entitled to qualified immunity. As discussed above, qualified immunity may be resolved one of two ways; the first resolved all issues except the backpack search. The second option requires Plaintiff to show a right was "clearly established" when it was allegedly violated. Defendants urge this argument throughout their MSJ and identify Plaintiff's failure to contend with it as a critical shortcoming. *See* Doc. 69 at 2 ("Plaintiff's Response[] appears to contemplate that this Court will … make Plaintiff's case for him."). Defendants' emphasis is understandable. Qualified immunity presents a "demanding" standard, *District of Colombia v. Wesby*, 138 S. Ct. 577, 589–590 (2018), meant to protect "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation omitted). If the defendant is not plainly incompetent or a knowing violator—that is, "if a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).

Meeting qualified immunity's "demanding" standard requires settled law: controlling authority[6] or a robust consensus of persuasive cases establishing legal contours that clearly apply to the specific circumstances the officer faced. *Wesby*, 138 S. Ct. at 589–590 (citations and internal quotation marks omitted). Specificity is particularly important in a Fourth Amendment context. *See Wesby*, 138 S. Ct. at 590 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). "Clearly established" precedent requires "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id.* (citation omitted). The precedent need not be

---

[6] The Supreme Court has repeatedly declined to decide whether circuit precedent constitutes "clearly established" law. *See, e.g.*, *Emmons*, 139 S. Ct. at 503 (citing *San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015)).

"directly on point," but must be sufficiently similar to place a search's lawfulness "beyond debate." *See id.* (citation omitted). The plaintiff bears the burden of identifying settled law that clearly applies to the officer's specific circumstances. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984); *see also, e.g.*, *Schafer v. Cty. Of Santa Barbara*, 868 F.3d 110, 1118 (9th Cir. 2017) (identifying a line of Ninth Circuit cases basing this proposition on *Davis*).

Here, Plaintiff fails to identify any relevant law in his Response and even after the Court prompted him before oral argument.[7] That is sufficient to support a grant of summary judgment on its own. Even if it were not, the Court reaches the same result based upon its own research and analysis comparing the undisputed facts with the legal backdrop clearly established when Officer Rivera searched Plaintiff's backpack. The first step is to establish the specific circumstances that confronted Officer Rivera. Because the backpack search is the only remaining issue, the circumstances are relatively simple. Officer Rivera searched Plaintiff's backpack after handcuffing him and closing him in the back of a police vehicle. Right before the search, Plaintiff arguably implied that drugs, weapons, or contraband might be in the backpack.

The next step is to determine the relevant period for "clearly established" precedent. This period begins with *Gant* on April 21, 2009, because *Gant* concluded a "trilogy" of cases governing searches incident to arrest. *Riley*, 573 U.S. at 384. *Gant* held that a SITA vehicle search is lawful "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* (quoting *Gant*, 556 U.S. at 343). Before *Gant*, many cases permitted vehicle searches incident to arrest even if there was no possibility that the arrestee could gain access to the vehicle at the time of the search. *See Gant*, 556 U.S. at 342 n. 3 (collecting cases and citing

---

[7] At oral argument, Plaintiff offered just one case as clearly established law prohibiting the backpack search: *U.S. v. Howards*, 156 F.Supp.3d 1045 (9th Cir. 2016). *See* Hr'g Trns. at 17.14. But *Howards* is easily distinguished because the backpack search there was not incident to arrest, and the officer lacked probable cause to make an arrest in any event. *See* 156 F.Supp.3d at 1048.

*Thornton v. United States*, 541 U.S. 615, 628 (2004) (Scalia, J., concurring) (collecting cases)). Despite its vehicle-search context, *Gant* is generally read as re-establishing *Chimel*'s twin concerns of officer safety and evidence destruction for the SITA exception. *See, e.g.*, *Riley*, 573 U.S. at 384 (analyzing a cellphone search incident to arrest under *Gant*/*Chimel*); *Cook*, 808 F.3d 1199 ("We do not read Gant's holding as limited only to automobile searches[.]"). *Gant* therefore begins a new chapter in the SITA exception. It forms the beginning of precedent that could "clearly establish" the Officers' search as unlawful. The end of the relevant period, naturally, is August 16, 2019, when Officer Rivera searched Plaintiff's backpack.

The next step is to identify cases that could have established "beyond debate" that Officer Rivera's backpack search was unlawful. As discussed briefly above, police may lawfully search a backpack after handcuffing a suspect in certain circumstances if the backpack remains within the suspect's area of "immediate control." *Compare United States v. Guzman-Guerrero*, No. 2:15-CR-96-RMP, 2016 WL 10951813, at *3 (E.D. Wash. Mar. 2, 2016), *aff'd*, 706 F. App'x 374 (9th Cir. 2017) (backpack search unlawful where suspect was alone, handcuffed, and lying face down in the woods surrounded by officers), *with, e.g.*, *United States v. Gordon*, 895 F. Supp. 2d 1011, 1020 (D. Haw. 2012), *aff'd*, 694 F. App'x 556 (9th Cir. 2017) (search of nearby duffel bag lawful where suspect was handcuffed and "under control of law enforcement officers"); *Cook*, 808 F.3d at 1199–1200 (upholding backpack search despite the "highly significant" but "not dispositive" fact that suspect was handcuffed and face down on the ground). These cases indicate that handcuffs alone do not make a backpack search unlawful "beyond debate."

Precedent is clear that backpack searches incident to arrest are unlawful when a suspect is handcuffed and closed in a police vehicle. In those circumstances, police generally may not search a backpack without a warrant. In *Gant*, for example, a police search of a vehicle was unlawful because the suspects were handcuffed and closed in a police vehicle. 556 U.S. at 344. Similarly, in *Maddox*, a police search of a keychain was unlawful because the suspect was handcuffed and closed in a police vehicle. 614 F.3d at

1048; *see also United States v. Camou*, 773 F.3d 932, 939 (9th Cir. 2014) (citing *Maddox* in similar circumstances). In each case, handcuffing and securing a suspect in a police vehicle removed *Chimel*'s twin justifications of officer safety and evidence preservation. Although not perfectly on point, taken together these cases establish beyond debate that—without more—police may not search a backpack after handcuffing and closing a suspect in the back of a police vehicle.

Precedent available to Officer Rivera did not clearly establish that Plaintiff's statement failed to revive officer safety concerns. In *Maddox*, for example, the court distinguished *Turner*, which upheld a bedroom search incident to arrest after the defendant was handcuffed and taken to another room. 614 F.3d at 1048 (citing *Turner*, 926 F.2d at 887). *Maddox* justified *Turner*'s result because there police had "already discovered a concealed weapon beneath the bedding." *Id. Maddox* also distinguished *United States v. Hudson*, which upheld a bedroom search incident to arrest after defendant was handcuffed and taken to another room. *Id.* (citing 100 F.3d 1409, 1420 (9th Cir. 1996)). *Maddox* justified *Hudson*'s result because there police had "noticed a rifle case near [defendant's] feet [when he was arrested]." *Id.* (citing 100 F.3d 1409, 1420 (9th Cir. 1996)). In both *Turner* and *Hudson*, the presence of a "weapon or threat" revived a legitimate concern for officer safety even though the suspect was handcuffed and secured in another room. *Id.* Similarly, police have long been justified to search luggage if they believe it contains "some immediately dangerous instrumentality, such as an explosive [because] it would be foolhardy to transport it to the station house without opening the luggage and disarming the weapon." *United States v. Chadwick*, 433 U.S. 1, 15 n. 9 (1977) (citing *United States v. Johnson*, 467 F.2d 630, 639 (2d Cir. 1972) (police not obligated to transport an unopened suitcase that likely contained a loaded firearm)), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). Since *Maddox*, no Ninth Circuit cases have elaborated other circumstances that could create a threat or exigency that revives officer safety concerns in the SITA context, though at least one district court has. *See Ross v. California*, 2013 WL 2898066, at *10 (C.D. Cal. June

10, 2013) (permitting a backpack search where officers were on the lookout for someone matching plaintiff's description, plaintiff's only ID was a concealed weapons permit, and the officers searched the backpack immediately after closing plaintiff in a police vehicle).

Overall, the Court concludes that settled law did not prohibit Officer Rivera's search of Plaintiff's backpack after Plaintiff implied the backpack could contain a weapon. As a result, the Officers are entitled to qualified immunity on the search of Plaintiff's backpack. The Court will therefore grant summary judgment for Defendants with respect to the backpack search of Count Two (Federal Illegal Search against Defendant Officers and vicariously against Defendant Town).

### C. Plaintiff's remaining arguments are unpersuasive.

Plaintiff asserts that Defendants do not address his claim for equitable relief. Response at 4. Plaintiff is not entitled to equitable relief because the Court will grant summary judgment for Defendants on all counts. Plaintiff also argues that pretextual "contempt of cop" arrests can constitute violations of the First Amendment. Response at 4 n. 3; Hr'g Trns. at 30:8–33:1. Plaintiff's argument is incongruent with his Amended Complaint, (Doc. 30), which does not include a First Amendment claim.

### IV. Order

For the reasons above,

**IT IS ORDERED GRANTING** Defendants' Motion for Summary Judgment (Doc. 58). The Clerk of the Court shall enter judgment accordingly.

Dated this 16th day of February, 2023.

_____
Honorable John C. Hinderaker
United States District Judge